United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 25, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

05-31078

---

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    v.

FELIPE CIQUEIROS VISCARRA,

                              Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Louisiana

---

Before JONES, Chief Judge, and BENAVIDES and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

Felipe Viscarra was convicted of conspiracy to distribute 50 grams or more of methamphetamine or 500 grams or more of a mixed substance containing detectable amounts of methamphetamine. 21 U.S.C. §§ 841(a)(1), 846. It is undisputed that Viscarra drove from Atlanta, Georgia to Monroe, Louisiana to assist Salvador Araiza. Araiza was transporting methamphetamine and cocaine in his car, and told Viscarra his car had broken down near Monroe. On appeal, Viscarra argues that the evidence was insufficient to prove

1

that he knew narcotics were in Araiza's car. After a thorough review of the record, we are satisfied that the evidence at trial was sufficient and we AFFIRM Viscarra's conviction.

## I.  FACTS AND STANDARD OF REVIEW

To overturn a conviction for insufficient evidence, we must be satisfied that no rational jury could have found that the government proved the essential elements of each charge beyond a reasonable doubt. *United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999). This analysis requires us to further detail the underlying facts.

Salvador Araiza was pulled over by Sergeant Stan Felts just outside of Monroe, Louisiana on December 13, 2004. He was en route from Dallas, Texas to Atlanta, Georgia. Araiza consented to a search of the car, which revealed thirteen bundles of narcotics containing approximately ten kilograms of methamphetamine and five kilograms of cocaine. After the drugs were discovered, Araiza agreed to cooperate in additional investigation into the source and recipient of the drugs.

Araiza then made recorded phone calls to "Guero" and Felipe Ayala and told them that his car had broken down in Monroe and he needed somebody to come and tow it to a mechanic. Guero, the apparent recipient of the shipment in Atlanta, quickly called Araiza back and indicated that somebody was coming to help him with the car. He then received a phone call from Viscarra, who

2

indicated he was on the way and would meet him at the Best Western where Araiza was staying for the night. The following day, December 14, Viscarra arrived in the late afternoon.

When Viscarra arrived at the hotel room, agents were waiting in the bathroom and recording his conversation with Araiza. That transcribed conversation—which was translated from Spanish, often unintelligible ("ui") due to recording problems, and full of typographical errors—follows:

Viscarra: Well, it that dammit

Araiza: You e coming by yourself?

Viscarra: Yes.

Araiza: What up? What did that buddy tell you?

Viscarra: No that (ui)

Araiza: Well, that where the problem is. It didn work. It a bitch. The damn You don have any tools to work with?

Viscarra: No.

Araiza: Well, son-of-a-bitch, how are we going to do it? Or what?

Viscarra: (ui)

Araiza: You want, you want me to leave the ifts there, or what the story?

Viscarra: Did you lock the damn doors?

Araiza: Yes, here there are people constantly coming or leaving. You want me to leave the gifts there, or How are you going to do it with that shit?

Viscarra: We're going to have to arrange it in my car.

Araiza: We have to fix it. I thought that you were going

3

to bring something else, another car to throw in to throw in that luggage.

Viscarra: They haven told me anything.

Araiza: No?  Well, how are we going to do it?

Viscarra: We bring a damn tow-truck.

Araiza: You know this area?

Viscarra: No.

Araiza: Son-of-a-bitch.  You don't have any tools, nothing to (ui)?

Viscarra: No, I don know how, my friend (ui).

Araiza: Yeah.  Yeah, but what did that (guy) tell you? Will he want you to take this shit with you?  Eh?  Didn he tell you?

Viscarra: He didn tell me.

At that point, Araiza repeatedly said "Bingo," which he testified was a code word to indicate Viscarra was heading into the bathroom, where the agents were hiding.  Araiza also testified that "luggage," "gifts" and "shit" were all code words used for "drugs," and that Viscarra knew what they meant.  The agents immediately arrested Viscarra after he entered the bathroom.

After he was arrested, agents found his vehicle about one-third of a mile away at a nearby restaurant.  Receipts in the car indicated that Viscarra had been in Monroe approximately two hours before he reached the hotel room, which the government argued was time he used to survey the area for police.

Additionally, Araiza testified that he met Viscarra on one prior occasion: In November 2004, just weeks before the incident at

4

bar, he was offered $5,000 to drive another shipment from Dallas to Atlanta. Araiza was told he was transporting paperwork and license plates, but he did not believe that. When he arrived in Atlanta, he called Guero to let him know of his arrival. Shortly thereafter, Viscarra met him at a hotel room, took the car and returned it a couple of hours later. Viscarra verified this account, but testified that he did not know if drugs were involved in that exchange.

## II. DISCUSSION

Under the applicable statutes, the government must have proved beyond a reasonable doubt that Viscarra "knowingly or intentionally" agreed to assist in the distribution of a controlled substance. 21 U.S.C. §§ 841(a)(1), 846; *see also United States v. Reveles*, 190 F.3d 678, 686 (5th Cir. 1999). The judge also gave a "deliberate indifference" instruction, in which he informed the jurors that they "may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious." The instruction was proper, as it is established that a defendant's "charade of ignorance" can be taken "as circumstantial proof of guilty knowledge." *United States v. Threadgill*, 172 F.3d 357, 368 (5th Cir. 1999).

Viscarra argues that the evidence as to his knowledge was insufficient because, at most, it proved that he knew he was involved in some illegal activity, but not necessarily drug

trafficking.  He admits that the jury could have concluded beyond a reasonable doubt that he *suspected* drugs were involved, but he urges that under our precedent this is insufficient to support a conviction.  We have held that "suspicion—even if focused on narcotics—is not enough; it does not tie [a defendant] to *knowledge* that drugs were involved beyond a reasonable doubt."  *Reveles*, 190 F.3d at 687 (emphasis added).

Viscarra relies almost entirely on *United States v. Reveles*, 190 F.3d 678.  There are critical differences between the facts of that case and those here.  In *Reveles*, there was a significant amount of exonerating evidence of a type not presented here.  As that panel summarized:

> First, it is uncontroverted evidence that Luis left his name, address, and phone number on an unattended shipment containing hundreds of pounds of marijuana. Second, the shipments bore no outward indication that they contained marijuana, i.e., they had no odor and the packaging suggested nothing untoward; indeed, the shipments were packaged in industrial cellophane so as to discourage any investigation into their contents. Third, Luis did not attempt to avoid the presence of several customs officials and accompanying drug-detecting canines. Fourth, the government presented no convincing evidence that Luis knew his brother was involved in narcotics. Fifth, Luis provided the police with a full statement-the facts of which the government has never contested-of his involvement with his brother's business. Finally, Willie paid Luis only fifty dollars per delivery, a sum lacking in disproportion to the task at hand by which Luis might have become suspicious of the true nature of his assignment.

*Id.* at 686–87.

Beside Viscarra's own testimony that he did not know drugs were involved at any point, Viscarra does not point to any similar exonerating evidence.  But the government pointed to numerous facts

6

suggesting that Viscarra knew drugs were involved: (1) during his conversation with Araiza, he seemed to understand that several code words meant "drugs"; (2) also during that conversation, he referred to arranging it in his car[1]; (3) he parked his car at a distance from the hotel room and took a couple of hours to reach the room; (4) he had engaged in a similar exchange just months earlier.

While Viscarra attempts to explain all of this evidence away through various arguments, we are bound to review the record "in the light most favorable to the prosecution." *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979). With that in mind, the government presented evidence that Viscarra was a repeat player in an operation that was accepting drug shipments, understood code words for "drugs," intended to arrange the drugs in his car, and quickly drove a great distance from Georgia to Louisiana to help a man he met only once before with a broken down vehicle.

Taken together, this evidence supports the inference that

---

[1] Viscarra disputed the translation of this portion of the transcript, arguing that the portion reading "[w]e're going to have to arrange it in my car," was properly translated as, "[w]e're going to have to fix the car." This was due to some dispute over how to translate the Spanish verb "arreglar" given the context of the conversation. Viscarra's counsel brought this dispute to the jury's attention when questioning Araiza and Viscarra, and there is no indication that he sought a further limiting instruction. *See United States v. Rena*, 981 F.2d 765, 768 (5th Cir. 1993) ("Upon a party's request, the court should also provide limiting instructions to inform the jury that the transcript is 'just another piece of evidence subject to objections, that it may have to be evaluated for accuracy, and that the jury need not accept any proffered transcript as accurate.").

Viscarra knew he was assisting in the transportation of a controlled substance. A rational factfinder could have found beyond a reasonable doubt that Viscarra knew he was assisting in the shipment of narcotics, or that his willful blindness was just a "charade of ignorance" pointing toward his guilty knowledge. *Threadgill*, 172 F.3d at 368. "[A] rational factfinder could readily have found [Viscarra] guilty beyond a reasonable doubt." *Jackson*, 443 U.S. at 324.

### III.  CONCLUSION

The evidence was sufficient for a reasonable juror to conclude that Viscarra knew he was involved in the distribution of narcotics, and we AFFIRM his conviction.