**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 14, 2013

No. 11-41363

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RUBEN VARGAS-OCAMPO,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, JONES and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant challenges one of two counts of his drug-trafficking conviction for insufficiency of evidence and the other for an erroneously submitted jury instruction. Finding no error, we affirm. We also clarify that because the Supreme Court has stated and repeatedly reaffirmed the constitutional test for sufficiency of the evidence to uphold a conviction, *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979), the statements inconsistent with *Jackson* that have appeared in some Fifth Circuit cases must be disavowed.

No.  11-41363

## Background

The grand jury for the United States District Court for the Southern District of Texas, McAllen Division, filed a two-count indictment charging Ruben Vargas-Ocampo with possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and with conspiring to do the same, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). The possession count also cited 18 U.S.C. § 2, which provides for the punishment of anyone who aids or abets a crime. Vargas-Ocampo was tried by jury. Vargas-Ocampo moved for a judgment of acquittal at the close of the government's case-in-chief and after the presentation of all the evidence, and the district court denied both motions. The jury found Vargas-Ocampo guilty on both counts, and the district court sentenced him to 78 months in prison. Vargas filed a timely appeal.

The following facts were developed at trial.

United States Customs and Border Protection Service ("CBP") Agent Stewart Goodrich was patrolling the Rio Grande Valley by helicopter[1] when he observed a pickup truck leaving the Rio Grande River headed north and two rafts moving south across the river toward Mexico. Agent Goodrich could see that the rafts were occupied.

Agent Goodrich dropped to an altitude between 150 and 200 feet and began following the truck. Agents Goodrich and Martinez-Baco could see that the truck's bed liner was too small and that there was about a six-inch gap between the walls of the truck bed and the liner. The agents could see what they believed to be packages of narcotics in the space in between. Agent Goodrich circled the helicopter around to in front of the truck, and he saw more packages in the

---

[1] Agent Orlando Martinez-Baco was also in the helicopter.

No. 11-41363

passenger seat of the truck and that the driver appeared to be talking on a cell phone.

In the meantime, the agents had contacted CBP ground units. Agent Maibum was on patrol in a ground unit. Shortly before receiving the call, Agent Maibum had observed two men sitting in vehicles approximately one and a half miles apart. The two men remained at their respective locations and used their push-to-talk radios each time Agent Maibum passed them in his vehicle. He believed they were acting as scouts for drug smugglers and was making plans to investigate when he received the call from the helicopter agents.

Agent Maibum drove toward the location indicated by the helicopter agents (an area notorious for drug smuggling) and saw Vargas-Ocampo's truck.[2] Agent Maibum began pursuing the truck and pulled to within 10-15 feet of it. Vargas-Ocampo drove the truck approximately another one-eighth of a mile before stopping by a fence. Vargas-Ocampo jumped the barbed-wire fence, ran through some thick brush, and disappeared into an open garage. Agent Maibum exited his vehicle and pursued Vargas-Ocampo on foot but fell trying to navigate his way past the barbed-wire fence, losing sight of Vargas-Ocampo. The helicopter agents informed Agent Maibum that Vargas-Ocampo had ducked into a nearby garage, and Agent Maibum found him there. Vargas-Ocampo was holding a push-to-talk radio and a cell phone. Vargas-Ocampo's phone rang many times after he was apprehended.

The agents retrieved the packages from the truck and discovered they contained marijuana. The agents ultimately found 84 packages totaling approximately 430 kilograms of marijuana. The registered owner of the truck was Maria Alvarez.

---

[2] It is unknown what happened to the two men Agent Maibum observed.

3

No. 11-41363

## DISCUSSION

On appeal, the defendant first challenges the sufficiency of evidence to convict him of conspiracy. Because the issue of evidentiary sufficiency was preserved at trial, this court reviews the record *de novo* under the thirty-four year old standard of *Jackson v. Virginia*, 443 U.S. 307, 90 S. Ct. 2781 (1979). The essential question is whether, viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319, 90 S. Ct. at 2789.

The Appellant adds to this standard, however, a caveat, gleaned from a few Fifth Circuit cases, that this court "must reverse a conviction if the evidence construed in favor of the verdict 'gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged.' " *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir. 1995)(citations omitted). This court has embroidered the *Jackson* standard further by stating that "[w]hen the evidence is essentially in balance, a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998). Rarely have these glosses, founded on a concept of equipoise, led to reversal of a conviction on appeal,[3] but they have been so frequently cited as to suggest confusion in our understanding of *Jackson. See, e.g.*, *United States v. Mudd*, 685 F.3d 473, 479–80 (5th Cir. 2012) (upholding conviction); *United States v. Viscarra*, 494 F.3d 490, 493–94 (5th Cir. 2007) (upholding conviction); *United*

---

[3] *United States v. Reveles*, 190 F.3d 678, 686 (5th Cir. 1999) (reversing conviction on the basis that "a reasonable trier of fact would see virtually equal circumstantial evidence of incrimination and exoneration, and consequently would entertain a reasonable doubt"); *United States v. Peñeloza*, 473 F.3d 575, 580–81 (5th Cir. 2006) ("[B]ecause the circumstantial evidence equally supports a theory of innocence of the crime charged, we find that it is insufficient to sustain the jury's verdict of guilt."); *United States v. Stewart*, 145 F.3d 273, 277–81 (5th Cir. 1998) (reversing conviction where government's arguments required the court to "pile inference on inference").

No. 11-41363

*States v. Mireles*, 471 F.3d 551, 555–57 (5th Cir. 2006) (upholding conviction); *United States v. Valdez*, 453 F.3d 252, 256–61 (5th Cir. 2006) (upholding conviction); *United States v. Rose*, 449 F.3d 627, 630–32 (5th Cir. 2006) (upholding conviction); *United States v. Dean*, 59 F.3d 1479, 1484–90 (5th Cir. 1995) (upholding conviction). It is time to dispel the confusion.

The Supreme Court has never departed from the *Jackson* standard, which preserves the fact-finder's role as weigher of the evidence. As the Court explained in *Jackson*, "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." 443 U.S. at 319, 90 S. Ct. at 2789. Moreover, a court "faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." 443 U.S. at 326, 90 S. Ct. at 2793. *Jackson* expresses no hierarchy of creditable evidence, whether direct or circumstantial, lay or expert or scientific. In particular, *Jackson* says nothing about the consequences for appellate review if a case is based on circumstantial evidence in equipoise, such that the prosecution and defense can each claim the benefit of inferences. *Compare Peñeloza*, 473 F.3d at 580–81 ("[B]ecause the circumstantial evidence equally supports a theory of innocence of the crime charged, we find that it is insufficient to sustain the jury's verdict of guilt.") The Supreme Court's point is to confirm, as a matter of due process, that the fact-finder, having viewed the evidence in the lively context of trial with the defendant present, is best positioned to reach a rational verdict. The role of reviewing courts is accordingly limited.

That *Jackson* remains unadulterated for sufficiency questions is confirmed by no less than three recent Supreme Court decisions, each a per curiam reversal of a lower court's misapplication of the standard. In *Coleman v. Johnson*,

No. 11-41363

___ U.S. ___, 132 S. Ct. 2060 (2012), the Court criticized a circuit court for its "fine grained factual parsing" of the evidence and erroneous use of state law to determine the distinction between mere speculation and a reasoned inference. The Court concluded, "the only question under *Jackson* is whether that finding [of guilt] was so insupportable as to fall below the threshold of bare rationality." 132 S. Ct. at 2065. *See also Cavazos v. Smith*, ___ U.S. ___, 132 S. Ct. 2, 7 (2012)(reversing habeas grant on ground that, under *Jackson*, "The jury decided that question [of guilt], and its decision is supported by the record."); *McDaniel v. Brown*, ___ U.S. ___, 130 S. Ct. 665, 674 (2010)(while court of appeals acknowledged that it must review the evidence in the light most favorable to the prosecution, "the court's recitation of inconsistencies in the testimony shows it failed to do so.")

Because we must operate on the premise that *Jackson* alone states the test for reviewing sufficiency of evidence supporting a conviction, the glosses that have appeared in our decisions, for whatever reason,[4] must be excised. Such statements should no longer be relied upon in this court.

When confronted with these authorities, Appellant's response is to reiterate his arguments that for each incriminating inference from the circumstantial evidence of conspiracy--the presence and timing of rafts in the river when Vargas Ocampo's truck was located, the large amount of marijuana found in his truck, the proximity and actions of surveillance "scouts" for the drug transfer, Ocampo's use of a push-to-talk telephone and numerous calls received on his other phone—there is a benign explanation. But this is precisely the weighing of inferences that, under *Jackson*, the jury was entitled to perform. The elements of a drug conspiracy are (1) an agreement between two or more persons to violate

---

[4] *See United States v. Bell*, 678 F.2d 547, 550 (5th Cir. 1982)(en banc). The concurring opinion may be the source of confusion, although *Bell* itself holds that *Jackson* is controlling whether the evidence is direct or circumstantial. 678 F.2d at 549 n.3.

No. 11-41363

the narcotics laws; (2) a defendant's knowledge of the agreement, and (3) his voluntary participation in the agreement. *United States v. Misher*, 99 F.3d 664, 667 (5th Cir. 1996). Not infrequently, the elements must be inferred from evidence concerning the defendant's concert of action with others. While it is not enough to sustain a conspiracy conviction that the defendant was merely present in an atmosphere that reeks of something foul, that objection will not wash in this case. Nor is it enough that a defendant was in a mere buyer-seller relationship with others, *United States v. Maseratti*, 1 F.3d 330, 336 (5th Cir. 1993), but again, this defendant was a link in the chain of importation and distribution. A circumstantial case is built upon reasonable inferences from all the relevant circumstances. And as this court has stated, "Circumstances, altogether inconclusive if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." *United States v. Rodriguez-Mireles*, 896 F.2d 890, 892 (5th Cir. 1990). Appellant may present all his arguments why the circumstantial evidence adduced here was insufficient to support a rational jury's determination of guilt. But even if there was "equipoise," a vague and subjective description in any event, the jury's final determination of guilt controls this court's review unless it was "so insupportable as to fall below the threshold of bare rationality." *Coleman*, *supra*.

It should be clear that, based on the *Jackson* standard, this court finds the evidence, circumstantial though it is, sufficient in quantity and quality to convict Vargas-Ocampo of knowing, voluntary participation in a conspiracy to possess with intent to distribute marijuana.

Vargas-Ocampo additionally contends that the district court erred in giving an aiding and abetting instruction to the jury on the possession charge, because it was unsupported by the evidence. A district court has "substantial latitude in formulating a jury charge," and may only be reversed for abuse of discretion.

7

No. 11-41363

*United States v. Carrillo*, 660 F.3d 914, 925-26 (5th Cir. 2011)(internal quotation marks and citation omitted). The court reasonably explained its lengthy aiding and abetting charge on the basis that a jury might think Vargas-Ocampo did not illegally possess the contraband if he did not package it and did not actually load it in his truck. Aiding and abetting is not a separate crime but (at least) an implicit charge in every indictment. *United States v. Neal*, 951 F.2d 630, 633 (5th Cir. 1992). The court neither erred nor abused its discretion.

For these reasons, the conviction is **AFFIRMED**.