**Opinion filed April 18, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00152-CR

_____

## GUSTAVO DOMINGUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 39th District Court

Haskell County, Texas

Trial Court Cause No. 6433

### O P I N I O N

The jury convicted Gustavo Dominguez of money laundering and assessed his punishment at confinement for ten years and a $10,000 fine. Appellant challenges his conviction for money laundering in three issues. Appellant challenges the sufficiency of the evidence supporting his conviction, the admissibility of two out-of-court statements, and the trial court's decision to permit Trooper Brody Moore's and Haskell County Chief Deputy Sheriff Winston Stephen's testimony related to drug trafficking. We affirm.

## I. Charged Offenses

The grand jury indicted Appellant for the felony offense of money laundering, alleging that Appellant knowingly concealed criminal activity proceeds from the delivery of a controlled substance.[1]  A person commits the offense of money laundering when he knowingly conceals the proceeds of criminal activity.[2]  "Proceeds" are defined as the funds acquired or derived from an act or funds produced or realized through an act; "criminal activity" includes any offense classified as a felony in Texas.[3]  The State had to prove that Appellant knowingly concealed $200,000 obtained from the delivery of a controlled substance.  The State was not required to prove that Appellant knew the "specific nature of the criminal activity giving rise to the proceeds" but, rather, that he knew that the funds came from criminal activity.[4]

## II. Background

Department of Public Safety (DPS) Trooper Brody Moore stopped a tractor trailer for a traffic violation.  Trooper Moore stood on the steps leading to the driver's door while talking to the driver and could sense that someone was moving around in the sleeper berth, which was behind a curtain.  The driver identified himself as Victor Acosta and said his passenger's name was "Gus."  Appellant emerged from the sleeper section and identified himself as Gustavo Dominguez.  Appellant told Trooper Moore that he was a part-time disc jockey who wanted to learn to be a truck driver.  Appellant did not have a commercial driver's license.  Acosta's lip quivered, and he appeared nervous as he answered questions.  The men told Trooper Moore they were returning to El Paso and had left Illinois the morning before.  Acosta maintained eye contact when he told Trooper Moore he did not have any drugs or guns, but broke eye contact when he denied having cash in the vehicle.  Acosta consented to a search of the vehicle.

Trooper Moore searched the cab and noted there was a tool box in the middle of the walkway between the driver's compartment and the sleeper.  When he shined his flashlight into the speakers, Trooper Moore discovered that something had been hidden inside the speaker box.  He noticed that one of the screws holding the cover in place was missing and that the other screws had been recently tooled.  Rather than retrieve one of his own tools, Trooper Moore

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West 2010).  TEX. PENAL CODE ANN. § 34.02(a)(1) (West 2011).

[2]PENAL § 34.02(a)(1).

[3]*Id.* § 34.01(1), (4) (West Supp. 2012).

[4]*See id.* § 34.02(a-1) (West 2011).

2

opened the nearby tool box and immediately found the appropriate screwdriver "on the top." Trooper Moore found vacuum-sealed bags of money in the speaker box. Trooper Moore arrested Acosta and Appellant and waited for a narcotics investigator and a canine unit.

Haskell County Chief Deputy Sheriff, Winston Stephens brought two duffel bags from his home. Trooper Kyle Taylor, DPS K-9 Specialist, confirmed that the duffel bags had not been around narcotics and prepared for the search. Trooper Taylor divided the currency and placed it into the two bags. Trooper Taylor took one bag of money and placed it in a line with two empty boxes, and the dog alerted on the bag containing the currency. He set up a second line of empty boxes and the second bag of money, and the dog positively alerted on the bag of money a second time. Trooper Moore and Chief Deputy Stephens took the money to Haskell National Bank. The officers and bank personnel divided the money into denominations and ran it through a counting machine. The currency totaled $502,020.

Appellant argued that he was not aware that the money was concealed in the truck. The jury heard expert testimony from Trooper Moore and Chief Deputy Stephens concerning their past experiences with drug and money interdiction and common conduct of people involved with drug trafficking. Trooper Moore testified that an unlicensed passenger is usually a friend or family member of the driver, that traffickers work in teams of two to protect the load and to blame each other if caught, and that money is transported in vacuum-sealed bags to conceal it better by both reducing the size and covering the odor of money commingled with illegal narcotics. Deputy Stephens testified there is a pattern to the flow of money and drugs; he explained that drugs are usually headed north from El Paso to be sold, and the money is transported back to El Paso.

The officers found five cell phones in the truck, but no one claimed the phone found in the sleeper section. Trooper Moore thought it was "unusual" that Appellant had two cell phones when he did not have a full-time job. Chief Deputy Stephens told the jury that it is not unusual for a person to have more than one cell phone but that more than one usually indicates illegal activity.

### III. Standard of Review

We review the legal sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). On appeal, we consider the evidence in the light most favorable to the prosecution and determine whether "*any* rational trier of fact could have found the

3

essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

"The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). "We review a trial court's decision to admit evidence over objection under an abuse of discretion standard and will not reverse the decision absent a clear abuse of discretion." *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A trial court abuses its discretion "only when the decision lies outside that zone of reasonable disagreement." *Zuliani*, 97 S.W.3d at 595.

A party can challenge the expert's qualifications, the relevance of the opinion, and the reliability of the opinion, and an expert opinion is unreliable if it is only "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993).

*IV. Analysis*

*A. Legal Sufficiency*

Appellant challenges the sufficiency of the evidence on three grounds. He argues that the evidence is legally insufficient to support the conclusions that, although Appellant was only a passenger, (1) he had knowledge of the hidden currency and (2) he knew the funds were the proceeds of criminal activity. Appellant also challenges the jury's conclusion that the currency was derived from the delivery of controlled substances.

On appeal, courts consider the evidence in the light most favorable to the prosecution and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. This standard properly defers to the factfinder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Our role is to "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). Because we defer to the factfinder, we resolve conflicting inferences in the record in favor of the verdict. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214

4

S.W.3d at 13. We apply the same standard of review "for both circumstantial and direct evidence cases." *Id.*

### 1. Knowledge of the Hidden Currency

We first address whether the evidence supports the conclusion that Appellant knew the currency had been hidden in the speaker box and that he knew the funds were proceeds from criminal activity. The State recognizes that, because the currency was hidden, it had the burden to present evidence linking Appellant to the currency.

Similar to possession cases where the drugs are discovered in a hidden compartment or in an area not under the suspect's exclusive control, the evidence must establish "that the accused's connection with the [contraband] was more than just fortuitous." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). In certain circumstances, knowledge that a person is possessing contraband can be inferred from his control of the vehicle in which contraband is found, especially when the contraband is large enough to indicate that the accused knew of its presence. *See Castellano v. State*, 810 S.W.2d 800, 805 (Tex. App.—Austin 1991, no pet.). When a person does not have exclusive control over the area where the contraband was found, we cannot infer such knowledge without other evidence linking the accused and the contraband. *Poindexter*, 153 S.W.3d at 406. To prove concealment or to prove knowledge of contraband found in a hidden compartment, there must be evidence besides control that demonstrates suspicious circumstances or guilty knowledge. *Bethancourt-Rosales v. State*, 50 S.W.3d 650, 656 (Tex. App.—Waco 2001, pet. ref'd).

If "the accused is not in exclusive possession of the place where the [contraband] is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband."[5] *Poindexter*, 153 S.W.3d at 406 (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)). This rule protects an "innocent bystander from conviction based solely on his fortuitous proximity to someone else's drugs." *Id.* Proving sole possession is unnecessary, but there must be "links" between the defendant and the contraband such that he, too, knew of the contraband and constructively possessed it. *Id.* at 412. The factors used to link an accused to possession of contraband are "not a litmus test," nor is a specific

---

[5]We note that the court in *Evans v. State*, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006), recognized that the term "affirmative" adds nothing to the plain meaning of "affirmative links" and that the court would no longer use that term but would use "link."

number of links dispositive. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). Because a factor may establish sufficiency under one set of facts yet have little value under another, we only consider the links supported by the record. *See Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("The absence of various links does not constitute evidence of innocence to be weighed against the links present.").

The following links have been applied to infer knowledge relating to the contraband:

(1)     whether the contraband was found in plain view or in a hidden place tied to the accused,[6]

(2)     whether the accused owned or had a right to possess the place where the contraband was found,[7]

(3)     whether the location of the contraband was accessible to the accused,[8]

(4)     the amount or quantity of contraband,[9]

(5)     plausibility of accused's story,[10] and

(6)     whether the accused made furtive gestures.[11]

This appears to be a typical hidden-compartment case with a large amount of contraband found in an enclosed space of a vehicle over which Appellant had some control. The range of punishment for the offense of money laundering depends on the value of the funds. *See* PENAL § 34.02(e). Laundering less than $20,000 is a state jail felony, but laundering more than $200,000 is a first-degree felony. *Id.* § 34.02(e)(1), (4). Officers seized more than $500,000 from the tractor trailer—more than double the amount that triggers the steepest penalty for money laundering. The currency was found in an enclosed space that can be connected to Appellant. DPS investigators took photographs during the search that show that the currency was hidden in a rear speaker near the top bunk of the sleeper cabin, and accessing the space

---

[6]*Hughes v. State*, 612 S.W.2d 581, 582 (Tex. Crim. App. 1981) (plain view); *Mendoza v. State*, 583 S.W.2d 396, 397 (Tex. Crim. App. 1979) (heroin found in closet along with other items accused admitted were his).

[7]*Mendoza*, 583 S.W.2d at 397.

[8]*Deshong*, 625 S.W.2d at 329.

[9]*Menchaca v. State*, 901 S.W.2d 640, 652 (Tex. App.—El Paso 1995, pet. ref'd).

[10]*United States v. Ortega Reyna*, 148 F.3d 540, 544 (5th Cir. 1998); *Bethancourt-Rosales*, 50 S.W.3d at 656. (accused claimed to have been in Houston for two weeks yet officers found a five-day-old receipt from a different location).

[11]*Kelley v. State*, 807 S.W.2d 810 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd).

required a screwdriver with a "star bit." The speaker screws looked like they had recently been tooled. Although Appellant was only a passenger, the currency was found secreted in a speaker box in the sleeper section of the tractor trailer that Appellant occupied at the time of the traffic stop. While the box could only be opened with a specific type of screwdriver, the appropriate tool was found immediately inside a nearby toolbox. It appeared as if someone had recently unscrewed the cover to the speaker box.

This is some evidence of control over the area where the contraband was found, but without evidence directly tying Appellant to the hidden currency, there must be additional evidence of suspicious circumstances that indicates guilty knowledge. *See Bethancourt-Rosales*, 50 S.W.3d at 654. The State argues that Appellant is connected to the hidden compartment: as Trooper Moore stood on the steps of the truck, he could feel someone moving around in the sleeper section of the cab, and that is where the troopers found the secreted money.

Convenient access to the contraband can link an accused to contraband found in the vehicle. *Compare Deshong*, 625 S.W.2d at 329 (concluding driver had knowledge of marihuana in the floorboard in front of the driver's seat), and *Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (concluding front-seat passenger had access to drugs in a factory compartment quickly accessible by folding down the rear seat of the truck), *with Tucker v. State*, 183 S.W.3d 501, 510 (Tex. App.—Fort Worth 2005, no pet.) (concluding driver and front-seat passenger could not have reached a baggie of cocaine that the backseat passenger had placed between the rear seats).

As Trooper Moore stood on the steps leading to the cab of the truck and talked to Acosta, he could feel movement in the truck coming from the sleeper section of the cab. When Trooper Moore discovered something hidden inside the speaker box, he noticed that one of the screws holding the cover in place was missing and the rest had been recently tooled. Rather than retrieve one of his own tools, Trooper Moore opened the nearby tool box and immediately found a screwdriver with the matching "star bit." Many convictions have been upheld based in part on the expert testimony of officers familiar with drug trafficking. *See Menchaca v. State*, 901 S.W.2d 640 (Tex. App.—El Paso 1995, pet. ref'd); *Bethancourt-Rosales*, 50 S.W.3d at 655. The jury could have reasonably inferred that Appellant knew of the hidden currency in light of the evidence that the speaker box, toolbox, and screwdriver were all within his reach.

7

Under some circumstances, the quantity of contraband is so large that it is implausible for a suspect to not know it is hidden in his vehicle. *Menchaca*, 901 S.W.2d at 652. Here, law enforcement officers testified about the direction of the flow of drugs and currency in drug trafficking. Chief Deputy Stephens testified that, based on his training and experience in drug and money interdiction, drugs flow north and money flows south. Chief Deputy Stephens told the jury his largest currency seizure was more than $57,000 in a truck headed south to El Paso. He further testified that, "[i]n the long-run," the currency is headed for El Paso and probably Juarez eventually. Acosta and Appellant claimed they were heading back to El Paso after making a trip north to Illinois. Trooper Moore testified that during his career he had seized the following amounts in four cases: $1,000,000; $40,000; $78,000; and $23,000, respectively.

Here, the officers seized more than $500,000 in currency from a truck bound for El Paso. Because of the value of the contraband, it is a reasonable inference that Appellant would not have been entrusted to take such valuable cargo across state lines if he was ignorant of the details surrounding his responsibilities and the importance of the cargo in his care. *See United States v. Del Aguila-Reyes*, 722 F.2d 155, 157 (5th Cir. 1983) (drawing similar conclusion based on testimony that the thirty pounds of cocaine had a wholesale value over $5 million); *see also Villarreal Lopez v. State*, 267 S.W.3d 85, 91, 96 (Tex. App.—Corpus Christi 2008, no pet.) (same for 48.6 kilograms of cocaine with a wholesale value around $700,000); *Menchaca*, 901 S.W.2d at 652 (same for fifty pounds of marihuana); *Castellano*, 810 S.W.2d at 803, 806 (same for sixty pounds valued at $38,000). Without more, the fact that the officers found the money on a known drug route would not likely support a finding of guilty knowledge, but it is a factor that suggests suspicious circumstances.

When a suspect provides an implausible story to explain his actions, that fact can constitute circumstantial evidence of guilt. *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998), *abrogated on other grounds by United States v. Vargas-Ocampo*, No. 11-41363, 2013 WL 1022854, at *1-3 (5th Cir. 2013). Several contradictions rendered Appellant's story implausible. Testimony revealed that Acosta initially told Trooper Moore that Appellant's first name was Gus but that he did not know his last name. Appellant told Trooper Moore that he was a part-time disc jockey who wanted to learn to drive a truck. Rather than observing and learning from Acosta, however, Appellant was found in the sleeper and was not licensed to drive a commercial vehicle. According to Trooper Moore, unlicensed passengers are usually friends or

8

family of the driver, so he found it "unusual" that Acosta claimed to be teaching Appellant about the truck-driving industry, but did not know Appellant's last name.

Trooper Moore also thought it was "unusual" that Appellant had two cell phones when he did not have a full-time job. The officers found five cell phones in the truck, but no one claimed the phone found in the sleeper section. Finally, the truck log contravened the alleged timeline of the trip; the pair claimed to have driven 1,200 miles from Illinois to Texas in the twenty-four hours before the stop. Trooper Moore testified that federal law requires drivers to have ten hours of rest for every eleven hours of driving time and that a single driver could not make the alleged trip in compliance with federal law. In light of this evidence, the jury could infer guilty knowledge from the implausibility of the story. Viewed in the light most favorable to the verdict, these facts support an affirmative link between Appellant and the currency and sufficiently support the conclusion that Appellant knew the money was derived from criminal activity and that he knew it was concealed in the vehicle.

### 2. Proceeds from the Delivery of a Controlled Substance

Appellant also challenges the evidence supporting the jury's conclusion that the funds were the proceeds from criminal activity. Appellant argues that the evidence of large, unrelated seizures of drugs and currency by the investigating officers was insufficient because there was no affirmative connection between the money and drugs.

Relying on *Deschenes v. State*, 253 S.W.3d 374 (Tex. App.—Amarillo 2008, pet. ref'd), Appellant contends that the officer's testimony amounts to mere conjecture. Expert testimony that explains the usual conduct and habits of drug traffickers, without more, cannot connect money to the delivery of a controlled substance. *Deschenes*, 253 S.W.3d at 386. In *Deschenes*, a nervous suspect was driving to visit his uncle but did not know the specific naval base at which his uncle was based. *Id.* at 376. The suspect looked away when he told the officer he did not have drugs or a large amount of money in the car, but officers found bundles of money concealed in the trunk. *Id.* at 376–77. There was expert testimony from the investigating officer that "[a] lot of the proceeds from the drugs that are shipped to the east come back westbound to either the originator who sent the drugs or someone that's going to purchase narcotics or weapons or whatever the contraband may be." *Id.* at 381. The court noted this "speculative statement" only had probative value if there was "some connection between the money and the trafficking of drugs." *Id.* In reversing the conviction, the court concluded there was "no credible evidence of a

temporal connection, or nexus, between the money and some criminal activity." *Id.* at 385–86. It reasoned that there was no admission related to the source of the money, that no drugs were found, and that there was no evidence that the accused had prior convictions or activities related to drugs. "Furthermore, the money was not packaged in any way to indicate a conscious desire to prevent its detection by drug dogs." The court also noted that the currency was not "removed from the luggage and alerted to in a controlled area." *Id.* at 385 n.22.

Appellant's reliance is misplaced because the facts here are distinguishable from those in *Deschenes*. First, the currency here was found inside vacuum-sealed bags, and law enforcement officers testified that traffickers often vacuum seal money to decrease the size and to mask the odor of any narcotics that may have been commingled with the money. Second, the officers created a controlled environment for the canine sniff. Chief Deputy Stephens brought duffel bags from his home and ensured the canine handler that the bags had never been around narcotics. The handler divided the currency into two bags to conduct two separate tests. The canine positively alerted to the bag containing the currency in each test. Based on the evidence, it was a reasonable inference that the money had been derived from the sale of narcotics. Viewed in the light most favorable to the verdict, the evidence sufficiently links the currency to criminal activity. We overrule Appellant's first issue.

*B. Admissibility*

Appellant complains in his second issue that the trial court erred when it allowed the jury to hear inadmissible hearsay. "We review a trial court's decision to admit evidence over objection under an abuse of discretion standard"; a trial court abuses its discretion only "when the decision lies outside the zone of reasonable disagreement." *Apolinar*, 155 S.W.3d at 186; *Zuliani*, 97 S.W.3d at 595. "If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment." *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

Hearsay is an out of court statement made by one other than the declarant that is offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). "An extrajudicial statement or writing which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay." *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). An out-of-court statement "may be admitted as circumstantial evidence from

10

which an inference may be drawn, and not for the truth of the matter stated therein, without violating the hearsay rule." *Gholson v. State*, 542 S.W.2d 395, 398 (Tex. Crim. App. 1976).

First, Appellant complains about Acosta's statements to Trooper Moore that there was a passenger in the vehicle and that the passenger's name was Gus. The trial court admitted the statement as an admission by a party opponent. Appellant argues on appeal that, because the statement must be made both during and in furtherance of the conspiracy, the statement was not a party admission because it was not made in furtherance of the conspiracy. The State argues the statement was not hearsay because it was not offered to prove the truth of the matter asserted. The Court of Criminal Appeals addressed a similar issue in *Jones v. State*, 843 S.W.2d 487 (Tex. Crim. App. 1992). An officer testified that, while he listened to another detective question another witness, the officer suspected that the defendant committed the crime and obtained an arrest warrant for the defendant. 843 S.W.2d at 499. The statement that the defendant was a suspect was not hearsay because the State did not offer it to prove the truth of the matter asserted but, rather, "to show why the officer got an arrest warrant for and arrested" the defendant. *Id.*

During trial, Trooper Moore testified that the driver of the truck told him that there was a passenger in the sleeper, that his name was Gus, and that he did not know the passenger's last name. The statements were not offered to prove there was a passenger because Appellant exited the sleeper of the truck, identified himself, and spoke to the officers. The statements were not offered to prove the passenger's name was Gus or that the driver did not know his last name. This testimony was offered to show why the officer was suspicious and asked for consent to search the vehicle. Trooper Moore testified that it is not uncommon for codrivers not to be familiar with each other but that usually an unlicensed passenger is a friend or family member of the driver. Because the statements were not offered for the truth of the matter asserted, but to show the facts establishing the trooper's suspicion, they were not objectionable hearsay. The trial court did not abuse its discretion when it permitted the testimony.

Appellant's second admissibility complaint is that Trooper Moore's testimony of the amount of currency seized was hearsay and violated the confrontation clause. Appellant argued that the evidence was inadmissible because Trooper Moore based his testimony on the results received by a machine that counted the currency. When the State argued that the machine cannot talk, Appellant responded that the State "had all that opportunity to count that money individually by themselves. They chose to have the machine count it. If they want to call the

11

machine to testify, that's their option." Trooper Moore testified that he helped divide the currency by denominations and watched the bank personnel run the currency through the counter. Because the money-counting machine is not a person, the counter is not a declarant by definition. *See Murray v. State*, 804 S.W.2d 279, 284 (Tex. App.—Fort Worth 1991, pet. ref'd) (concluding a machine is not a declarant unless the output represents statements placed into the computer by a person). It was not an abuse of discretion to permit the officer to testify to the amount of currency seized over Appellant's hearsay objection.

Appellant also complains that Trooper Moore's testimony about the amount of currency violated the Confrontation Clause. To preserve an error for review, the complaining party must make a specific objection in the trial court, and the issue on appeal must comport with the objection made. TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Appellant's objection was limited to hearsay. Because Appellant's Confrontation Clause claim on appeal does not comport with the objection he raised, he failed to preserve the issue for appellate review. *See Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004); *Kennedy v. State*, 255 S.W.3d 684, 690 (Tex. App.—Eastland 2008, no pet.). Appellant's second issue is overruled.

*C. Expert Testimony*

Appellant complains in his final issue that the trial court erred when it permitted Trooper Moore to testify as an expert because he was not qualified and because the testimony was not relevant. Appellant complains about five areas of testimony. Appellant first complains that the trial court erred when it allowed Trooper Moore to testify that a passenger who is not licensed to drive commercial vehicles is usually a close friend or relative of the driver and to testify about how cell phones are used in trafficking drugs. Appellant did not, however, object to this testimony in the trial court. Because a timely and specific objection must be made in the trial court to preserve a complaint for appeal, Appellant has waived any error caused by admitting the testimony. *See* TEX. R. APP. P. 33.1(a).

Appellant's next complaint is that the trial court erred when it permitted Trooper Moore to testify about the purpose of vacuum-sealed containers and about the flow of drugs and money in the trafficking of illegal substances. "An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Appellant failed to object when Chief Deputy Stephens later testified

that drug traffickers vacuum seal packages of money or drugs to "cover the scent" and that "[d]rugs are going north; money's headed south." Any error in the admission of the objected-to testimony was cured when the same evidence was admitted into evidence without objection. *See id.*

Appellant's final complaint is that the trial court erred when it permitted Trooper Moore to testify that when trafficking drugs or money, drivers carry unlicensed passengers to watch over and protect the load and to blame each other if they are caught. Appellant states in his brief that "[i]t would appear the trial court allowed witness Brody Trooper Moore's testimony as expert witness testimony under Texas Rule of Evidence 702." At trial, Appellant objected that the testimony was speculative. Appellant's trial objection does not comport with his complaint on appeal.

But even if we could construe Appellant's speculation objection as a challenge under Rule 702, he waived the complaint. We agree with Appellant that a party can challenge the expert's qualifications, the relevance of the opinion, and the reliability of the opinion and that an expert opinion is unreliable if it is only "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Appellant complains on appeal about the expert's qualifications and the relevance of the testimony; Appellant does not, however, challenge the reliability of the testimony. Because his argument on appeal does not comport with his objection, Appellant has waived this complaint. TEX. R. APP. P. 33.1(a); *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1999) (op. on reh'g) ("[A]n objection stating one legal theory may not be used to support a different legal theory on appeal."). Appellant's third issue is overruled.

*This Court's Ruling*

We affirm the trial court's judgment.

MIKE WILLSON

JUSTICE

April 18, 2013

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.