

# IN THE
## TENTH COURT OF APPEALS

_____

### No. 10-12-00154-CR

**SERGIO SANTIESTEBAN-PILETA,**

                               **Appellant**

**v.**

**THE STATE OF TEXAS,**

                               **Appellee**

_____

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2011-1592-C1

_____

## O P I N I O N

_____

Sergio Santiesteban-Pileta was convicted of possession of marijuana in an amount over 2,000 pounds. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(6) (West 2010). He was sentenced to 75 years in prison with a fine of $10,000. Because the evidence was sufficient to prove he possessed the marijuana and because the trial court did not abuse its discretion in restricting voir dire, the trial court's judgment is affirmed.

### SUFFICIENCY OF THE EVIDENCE

Santiesteban-Pileta argues in his first issue that the evidence was insufficient to prove he "possessed" the marijuana found in the trailer of the 18-wheeler he was

driving.

*Standard of Review*

In reviewing the sufficiency of the evidence to support a conviction, we view all the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). If the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326. The factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). In a sufficiency review, circumstantial evidence is as probative as direct evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

*Links*

To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Id*. 405-406 (*quoting Brown v. State*, 911 S.W.2d

744, 747 (Tex. Crim. App. 1995)). Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, presence or proximity, when combined with other evidence, either direct or circumstantial (*e.g.*, "links"), may be sufficient to establish that element beyond a reasonable doubt. *Id*. Evidence which links the defendant to the controlled substance suffices for proof that he possessed it knowingly. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

*Evidence*

Santiesteban-Pileta was stopped on Interstate 35 south of Lorena, Texas while driving an 18-wheeler by Department of Public Safety Trooper James Hicks. Santiesteban-Pileta was taking a load of "toys" to Dallas, Texas from Laredo, Texas. Hicks had noticed that the cab of the truck had three Texas Department of Transportation numbers on the side of it which raised his suspicion about drug trafficking. One TX DOT number was correct, but another number was the United States Department of Transportation number and the third was the Vehicle Identification number. When Hicks climbed up to the cab to talk to Santiesteban-Pileta, he noticed that the truck did not have any required safety items and did not have the required bedding in the sleeper portion of the cab. Santiesteban-Pileta also did not have much of the paperwork required to be kept in the truck.

The bill of lading Santiesteban-Pileta provided to Hicks was also suspicious. No dates, such as the date the cargo was loaded and the expected delivery date, were included on the document. There were also no phone numbers, as is customary, for the company having the items shipped and the company having the items delivered on the document. The load recorded on the document was also rather small to be shipped via truck. It was later discovered that the shipper noted on the bill of lading had not requested the trucking company to take a load of toys to Dallas, and that the bill of lading was forged. Further, it was learned that the toy company to which the items were to be delivered had not requested a shipment of toys from the shipper and did not expect any kind of shipment by truck.

The State presented evidence that Santiesteban-Pileta's departure from Laredo, on the U.S.-Mexico border, coincided with a shift change at the border patrol. Santiesteban-Pileta drove only 39 miles in an hour and 45 minutes before stopping at a truck stop in Encinal, Texas which was known by Border Patrol for high levels of criminal drug activity. The time on Santiesteban-Pileta's receipt from the Encinal truck stop did not match the time of the stop Santiesteban-Pileta noted in his log book. He made it to Lorena, where he was stopped, in a shorter time than normal for an 18-wheeler.

When Hicks took Santiesteban-Pileta back to the patrol unit so he could verify Santiesteban-Pileta's identification and driver's license, Santiesteban-Pileta became very nervous: his carotid artery in his neck was pounding like he had just ran a marathon,

his hands were shaking, his voice was quivering, and he looked like he was scared for his life. Santiesteban-Pileta would not make eye contact with Hicks and would, instead, look outside or at the floorboard. Hicks then asked Santiesteban-Pileta for consent to search the trailer, and Santiesteban-Pileta consented. Hicks broke the seal on the trailer and found five tightly sealed crates surrounded by eight pallets of broken toys and other miscellaneous items such as coffee makers. After the trailer was opened, Hicks noticed that Santiesteban-Pileta appeared as though he was about to pass out from hyperventilating.

A search of the crates revealed 59 bales of marijuana. Some bales contained other bales and, so, 77 total bales were recovered weighing a total of 2,144.54 pounds without the packaging materials. The street value for that amount of marijuana was approximately $4,888,320.

Santiesteban-Pileta's story was that he was called to pick up a tractor-trailer at the Pilot truck stop at mile marker 13 in Laredo and take it to Dallas. He retrieved the key from one of the cab tires. He had done this sort of thing dozens of times before. Santiesteban-Pileta initially told investigators that his wife dropped him off at the truck stop. But when his wife denied dropping him off, Santiesteban-Pileta changed his story and said he drove himself to a warehouse behind the Volvo dealership. When testifying, the story changed again. Santiesteban-Pileta and his wife testified that Santiesteban-Pileta was dropped off at the Pilot at mile marker 13. Santiesteban-Pileta said the warehouse behind the Volvo dealership and the Pilot truck stop were in the

same area. But when the investigator checked the locations of both, he found that the Volvo dealership was located at mile marker 3 rather than mile marker 13 where the Pilot was located.

Santiesteban-Pileta denied knowing anything about the shipper or the specifics of the destination, such as who to contact if he could not locate the delivery place or what time he was supposed to be there, and had not been present when the cargo was loaded and the trailer sealed. He only knew that the cargo he was transporting was "toys" as was indicated on the bill of lading. He also denied knowing anything about the person who called him for the job, only that his name was Tony, and he met Tony in jail. He was not concerned, and claimed ignorance, that the truck had its DOT numbers and VIN number misidentified, had no bedding in the sleeper, had no safety equipment such as warning triangles for a breakdown or a fire extinguisher, or that he had no fuel receipts or money from the trucking company for fuel or other necessary expenses. He also had no proof of insurance, no operating agreement, no fuel tax agreements, no TX DOT cab card, and no US DOT cab card as required. His excuse for not checking for these items and taking a tractor-trailer without seeing the cargo loaded and sealed was that he had not been a trucker for very long.

The State's expert testified that Santiesteban-Pileta should never have taken the job without all the necessary paperwork, necessary equipment, necessary truck identification numbers, and without being present when the cargo was loaded. He also stated in rebuttal that Santiesteban-Pileta's testimony was not credible.

*Analysis*

Santiesteban-Pileta faults the courts of appeals in this State for not discussing and analyzing the specific links from the list of potential links that have developed over the years that were present in the cases decided by those courts. But it is the sum total of the circumstantial evidence sufficient to support a rational jury's finding, beyond a reasonable doubt, that appellant exercised actual care, custody, control, or management of the contraband that is analyzed, not a particular link used in a particular case. *See Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006). Further, specific links that have been analyzed in other cases are simply factors which may circumstantially establish the sufficiency of the evidence to prove a knowing "possession." *Id*. n. 12. They are non-exclusive and not a litmus test. *Id*.

Even if we did not take into consideration all of the evidence listed above as linking Santiesteban-Pileta to the marijuana, which we do, there are at least two previously identified links we find significant, along with the other circumstantial evidence, to this appeal.

First is the "valuable cargo" link where a jury can infer knowledge of the controlled substance when it is considered valuable. *See Menchaca v. State*, 901 S.W.2d 640, 652 (Tex. App.—El Paso 1995, pet. ref'd) (where defendant denied knowledge of 49 pounds of secreted marijuana, jury could infer knowledge of valuable cargo). *See also United States v. Del Aguila-Reyes*, 722 F.2d 155 (5th Cir. 1983) (same; cocaine worth $5,000,000.); *Castellano v. State*, 810 S.W.2d 800, 806 (Tex. App.—Austin 1991, no pet.)

(same; 60 pounds of marijuana worth $38,000). As in those other cases, the jury in this case was well aware that the cargo with which Santiesteban-Pileta had been entrusted was extremely valuable. The jury could rationally infer that Santiesteban-Pileta would not have been entrusted in taking such a valuable cargo if he were a mere innocent, simply picking up the cargo at a truck stop, taking the keys off one of the tires, and ignorant of all the details surrounding his responsibility as a truck driver and the importance of the cargo in his care.

Second is the "implausible story" link where an implausible story by the defendant can provide circumstantial evidence indicating guilty knowledge of the controlled substance. *See Bethancourt-Rosales v. State*, 50 S.W.3d 650, 655 (Tex. App.—Waco 2001, pet. ref'd) (defendant told officers she had been in Houston for the last two weeks when a receipt indicated defendant had had repairs made to the vehicle in Ohio five days before the stop). *See also United States v. Casilla*, 20 F.3d 600, 607 (5th Cir. 1994) (jury could reject implausible explanation and conclude defendant had knowledge of cocaine in van). The jury was free to reject Santiesteban-Pileta's story of ignorance as implausible in light of the inconsistencies of his explanation about where he picked up the tractor-trailer, the circumstances surrounding his departure and change of shift for border patrol, the lack of necessary items in the truck, the time purportedly taken to travel 39 miles, the inconsistencies with time and his log book, and the absence of information, and his lack of concern about the absence of the information, on the bill of lading. Thus, the jury was free to infer Santiesteban-Pileta had knowledge of the

marijuana in the trailer.

Santiesteban-Pileta would also like us to review and give great scrutiny to the specific links not present in this case. However, the absence of any of the various factors discussed in other cases does not constitute evidence of innocence to be weighed against the factors present in this case. *See Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

### *Conclusion*

The logical force of the combined pieces of circumstantial evidence in this case, including the value of the marijuana and Santiesteban-Pileta's implausible story, coupled with reasonable inferences therefrom, is sufficient to establish, beyond a reasonable doubt, that Santiesteban-Pileta knowingly possessed the marijuana in the trailer he was hauling. The jury was not required to believe the contrary testimony presented by Santiesteban-Pileta. Santiesteban-Pileta's first issue is overruled.

### RESTRICTED VOIR DIRE

Next, Santiesteban-Pileta argues that the trial court erroneously unduly restricted voir dire concerning the necessary burdens of proof. Specifically, he argues that the trial court disallowed "questions" regarding *reasonable suspicion* and *probable cause*.

Prior to trial, counsel for Santiesteban-Pileta proffered a "Motion to Allow Questioning Concerning How the Term 'Beyond a Reasonable Doubt' May be Understood on Voir Dire…," requesting the trial court's permission to inform the jury panel that, among other things, the State's burden of proof was greater than proof of a

reasonable suspicion and proof of probable cause. Santiesteban-Pileta submitted the following:

> Each question below is set forth individually, and would be asked in voir dire in the form set forth, or a similar form:
>
> \*\*\*
>
> 6. The burden of proof is the measure of proof required to show Mr. Santiesteban-Pileta is guilty beyond a reasonable doubt:
>
> \*\*\*
>
> d. is greater than proof of reasonable suspicion, which requires "specific, articulable facts that, when combined with rational inferences from those facts and the officer's training, would lead an officer to believe that a person in the vehicle was, or is about to engage in criminal activity."
>
> e. is greater than proof of "probable cause." For instance, probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued.

Those general areas as describe were "disallowed."

Immediately prior to the start of voir dire, the trial court explained to Santiesteban-Pileta's counsel

> "In the first place, you wish to compare reasonable suspicion and probable cause, which are issues regarding an arrest. These are not matters that the jury is called upon to decide. They are not part of the standard of proof in a civil or criminal case. I'm not going to allow you to ask those two questions of the jury panel….

Santiesteban-Pileta was allowed to compare clear and convincing evidence and preponderance of the evidence standard of proof with the beyond a reasonable doubt standard of proof. *See Fuller v. State*, 363 S.W.3d 583 (Tex. Crim. App. 2012). *See also Garcia v. State*, Nos. 10-11-00266-CR, 10-11-00267-CR, 2012 Tex. App. LEXIS 9880 (Tex.

App.—Waco Nov. 15, 2012, no pet.); *Easley v. State*, No. 10-12-00018-CR, 2012 Tex. App. LEXIS 7859 (Tex. App.—Waco Sept. 13, 2012, pet. granted). Further, the trial court gave the jury panel an extensive overview of beyond a reasonable doubt and briefly compared it to preponderance of the evidence and clear and convincing evidence.

The trial court has broad discretion over the process of selecting a jury. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). We leave to the trial court's discretion the propriety of a particular question and will not disturb the trial court's decision absent an abuse of discretion. *Id.* A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry. *Id.* at 755-56. A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.* at 756.

However, to preserve error, Santiesteban-Pileta must show "that he was prevented from asking *particular* questions that were proper." *Id.* at 756 (emphasis in original); *Sanders v. State*, No. 10-12-00019-CR, 2012 Tex. App. LEXIS 9853, *5 (Tex. App.—Waco Nov. 29, 2012, pet. ref'd) (not designated for publication). That the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated is not enough because the trial court might have allowed a proper question had it been submitted for the court's consideration. *Sells*, 121 S.W.3d at 756 (citing TEX. R. APP. P. 33.1(a)(1)(A)); *Sanders*, 2012 Tex. App. LEXIS 9853, *5-6.

Santiesteban-Pileta never submitted a particular question for the trial court's consideration; and thus, he was not prevented from asking questions that may have been proper. Although he labeled them "questions," he only proposed areas of inquiry.

Santiesteban-Pileta v. State                                                                                       Page 11

This is not enough. Accordingly, Santiesteban-Pileta's argument is not preserved, and his second issue is overruled.

**CONCLUSION**

Having overruled each of Santiesteban-Pileta's issues on appeal, we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed June 20, 2013
Publish
[CRPM]