**Opinion issued April 9, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00280-CR

_____

**JAMES BRADLEY HAMMOND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court Case No. 1509181D

## MEMORANDUM OPINION

A jury convicted appellant, James Bradley Hammond, of the first-degree

felony offense of possession with intent to deliver between four and two hundred

grams of methamphetamine, a controlled substance.[1] After appellant pleaded true to the "Repeat Offender Notice" contained in the indictment, the trial court assessed his punishment at fifty years' confinement. In his sole issue, appellant contends that the trial court abused its discretion by failing to grant his motion for directed verdict because the State presented insufficient evidence affirmatively linking him to the narcotics seized by police.

We affirm.

## Background

After an investigation, on August 9, 2017, the City of Fort Worth Police Department obtained a warrant to search 8413 Bellechase Drive, Apartment 1808, in Fort Worth for narcotics.[2] Because the investigating officers were concerned about the potential for encountering a dangerous situation upon entering the residence, the narcotics division enlisted the assistance of the Fort Worth P.D. SWAT team to help in executing the warrant.

---

[1]   *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (providing that person commits first-degree felony if person possesses with intent to deliver between four and two hundred grams of controlled substance listed in penalty group one); *id.* § 481.102(6) (listing methamphetamine as controlled substance in penalty group one).

[2]   The Texas Supreme Court transferred this appeal from the Court of Appeals for the Second District of Texas to this Court pursuant to its docket-equalization authority. *See* TEX. GOV'T CODE ANN. § 73.001 ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

The SWAT team executed a "no knock" search warrant on the residence, using a metal ram to knock in the front door to the apartment. Corporal C. Brookwalter, a member of the SWAT unit, testified that he was the fifth member of the unit to enter the apartment once the door was opened. He went down a hallway that opened into a living room where he found three people: a woman named Susan Thornbrue lying on the floor near a loveseat; a man named Marshall Pistinger standing near the kitchen; and another man, appellant, sitting on a couch along the back wall of the living room. Corporal Brookwalter ordered appellant to show his hands and, in response, appellant leaned a little to his right. Brookwalter moved closed to appellant and saw two handguns sitting on a counter immediately to the right of the couch. Aside from securing the scene, the SWAT unit played no role in searching the apartment for narcotics. The trial court admitted into evidence a body camera recording of the SWAT team's entry into the apartment.

Officer M. McMeans worked in the narcotics unit of the Fort Worth Police Department and was part of the team that searched the apartment on August 9. By the time Officer McMeans entered the apartment, appellant and the other two individuals present had already been detained. The trial court admitted multiple photographs of the apartment, as well as a second video made by the narcotics team during the team's search. Officer McMeans agreed with the State that the living room of the apartment was "fairly small" and that it looked as if it could be crossed

3

from one side to the other "in about two steps." Officer McMeans testified that, on the end table next to where appellant was sitting on the couch, the narcotics team found a pipe used to smoke methamphetamine and a bag full of smaller baggies commonly used to package narcotics for sale. Other pipes were discovered in a cabinet in the kitchen, and officers found a torch used to heat pipes to smoke methamphetamine. A small baggie of methamphetamine was found on the floor, directly in front of where appellant had been sitting on the couch. Two loaded handguns—a semiautomatic pistol and a revolver—were found "just sitting out in the open on the bar" in the kitchen.

Officers found a shoebox underneath the end table that held more small baggies, and, in between the end table and the wall, they also found small baggies that held what was ultimately determined to be Xanax bars. Another shoe box held cell phones and a shot glass that had a plastic baggie with a white crystalized substance inside of it. On the floor, officers found a digital scale that had a fake cover that made the scale look like a CD case, and there were shards of methamphetamine on the carpet surrounding the scale. Another shoebox located near the couch held a different digital scale. Officer McMeans testified that shards of methamphetamine were "scattered all over the place in between the couch and the end table," and there were crystals on top of the end table as well.

Behind the end table next to the couch where appellant had been sitting, officers found a large plastic baggie "that is obviously busted open and methamphetamine scattered out on the floor" next to an intact baggie that held a large quantity of methamphetamine. Both of these baggies were next to a digital scale. The State asked Officer McMeans if drug dealers "usually keep their drugs behind the couch end table scattered around like that," and McMeans responded that they usually did not, which indicated to him that "somebody threw that back behind somebody right there . . . [they] wanted to get rid of the evidence real quick and threw it behind them." He testified that it is common, when the SWAT team enters an apartment, for dealers to try to separate themselves from the narcotics. He stated that, in this case, it took three hits with the ram before the SWAT team could break open the front door, plus the living room was down a hallway from the door, which gave the occupants of the apartment "a little more time" to try to get the drugs away from them.

The officers also found an envelope addressed to appellant at the address of the apartment where the officers executed the search warrant. Officer McMeans testified that this envelope "solidified [his] belief that [appellant] is a resident of that apartment." He stated that if someone is receiving mail at the location where they are found, it "means that that person resides there at that location." Officers also found both male and female clothing in a closet. Draped over a television hanging

5

directly across from the couch where appellant had been sitting was a T-shirt with a picture of notorious drug trafficker El Chapo.

Officers arrested appellant for possession of Xanax and possession with intent to deliver methamphetamine. Officer McMeans stated, "The manufacture delivery charge was due to the quantity of methamphetamine that was located in [appellant's] residence, coupled with the packaging that was found throughout the residence, the digital scales that were found throughout the residence and then, obviously, our prior knowledge." Officer McMeans also testified that, out of the three occupants of the apartment at the time of the search, appellant was the closest one to the narcotics. He stated:

> It was where he was seated at in comparison to where the narcotics [were] located within what—what we call wingspan. Right here. Within arm reach. Right there where he was seated on the couch. So that being said consider where everybody else was located at, in my opinion, it was [appellant's] narcotics that were located in the house.

Sharon Patton, a forensic scientist at the Fort Worth Police Department Crime Lab, analyzed the narcotics recovered from the apartment. The two baggies that were recovered from behind the couch where appellant had been sitting contained 44.136 grams and 7.332 grams of methamphetamine. The baggie found on the floor directly in front of where appellant had been sitting on the couch contained 4.274 grams of methamphetamine. The baggie found inside of a shot glass sitting in a shoebox contained 1.676 grams of methamphetamine. The total weight of methamphetamine

6

recovered from the apartment was 57.418 grams. Patton also tested a baggie of twenty-five Xanax pills, which weighed 6.579 grams. Officer McMeans estimated that the total amount of narcotics found in the apartment would sell for around $2,400 on the street.

After the State rested, defense counsel moved for a directed verdict, arguing that no evidence affirmatively linked appellant to the methamphetamine recovered at the apartment. The trial court denied appellant's motion for directed verdict. The jury found appellant guilty of possessing a controlled substance, methamphetamine, with the intent to deliver.[3] After appellant pleaded true to being a repeat offender, the trial court assessed his punishment at fifty years' confinement. This appeal followed.

## Sufficiency of the Evidence

In his sole issue, appellant argues that the trial court abused its discretion when it denied his motion for directed verdict because the State did not present sufficient evidence that he possessed the methamphetamine found within the apartment. Specifically, he argues that he was not the only person present in the apartment at

---

[3] The State had also charged appellant with the offense of possession of methamphetamine, and this lesser-included offense was submitted to the jury. Because the jury found appellant guilty of the possession with intent to deliver offense, it made no finding of whether appellant was guilty of simple possession.

the time of the search and that the State did not introduce evidence affirmatively linking him to the methamphetamine.

## A.     *Standard of Review and Applicable Law*

A challenge to the trial court's failure to grant a motion for directed verdict is a challenge to the sufficiency of the evidence. *Mills v. State*, 440 S.W.3d 69, 71 (Tex. App.—Waco 2012, pet. ref'd); *see Smith v. State*, 499 S.W.3d 1, 6 (Tex. Crim. App. 2016) ("A motion for instructed verdict is essentially a trial level challenge to the sufficiency of the evidence."); *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) ("We treat a point of error complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence."); *Sutton v. State*, 328 S.W.3d 73, 75 (Tex. App.—Fort Worth 2010, no pet.) ("A challenge to the trial court's ruling on a motion for a directed verdict is, in actuality, a challenge to the legal sufficiency of the evidence to support the conviction.").

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex.

Crim. App. 2008). The jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *Rivera v. State*, 507 S.W.3d 844, 853–54 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We give great deference to the jury's credibility determinations. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination."). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

To secure a conviction in this case, the State was required to prove that appellant knowingly possessed with intent to deliver between four and two hundred grams of a controlled substance, methamphetamine.[4] TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d); *see Kibble v. State*, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (setting out elements of offense of possession with intent to deliver). The Health and Safety Code defines "possession" as "actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38); *Lipscomb v. State*, 526 S.W.3d 646, 652 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). In cases involving the prosecution of an offense for possession of a controlled substance, the State must prove (1) the accused exercised control, management, or care over the substance, and (2) the accused knew the substance possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Lipscomb*, 526 S.W.3d at 652; *see Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). "Possession of contraband need not be exclusive and evidence that shows the accused jointly possessed the contraband with another is sufficient." *Woodard v. State*, 355 S.W.3d 102, 110 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

---

[4] Appellant does not challenge the sufficiency of the evidence to support the "intent to deliver" element of this offense.

10

Regardless of whether the evidence is direct or circumstantial, the State must establish that the defendant's connection with the drugs was more than fortuitous, a requirement known as the "affirmative links" rule. *Evans*, 202 S.W.3d at 161. This rule "protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs." *Id.* at 161–62. "When the contraband is not in the exclusive possession of the defendant, a fact finder may nonetheless infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference." *Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016). Thus, although a defendant's mere presence at a residence where an illicit substance is found is insufficient, by itself, to prove possession, the defendant's presence, when combined with other evidence linking the defendant to the substance, may be sufficient to prove possession beyond a reasonable doubt. *Lipscomb*, 526 S.W.3d at 652.

The Court of Criminal Appeals has set out a non-exclusive list of possible links that courts have recognized as sufficient, either by themselves or in combination, that may establish a person's knowing possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether

11

the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n.12; *see Kibble*, 340 S.W.3d at 18 (listing some factors relevant to possession determination including amount of contraband found, location of contraband relative to defendant's personal belongings, defendant's relationship to other people with access to premises, incriminating statements, and proximity of defendant to contraband).

These links are not a "litmus test," and it is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162 & n.12; *see Tate*, 500 S.W.3d at 414 (noting that although factors listed in *Evans* "can help guide a court's analysis, ultimately the inquiry remains the" sufficiency of evidence standard set out in *Jackson v. Virginia*); *Santiesteban-Pileta v. State*, 421 S.W.3d 9, 14 (Tex. App.—Waco 2013, pet. ref'd) ("[S]pecific links that have been analyzed in other cases are simply factors which may circumstantially establish the sufficiency of the evidence to prove a knowing 'possession.'"). We do not analyze the links in isolation. *See Tate*, 500 S.W.3d at 417; *Evans*, 202 S.W.3d at 164. "The absence of various links does not constitute evidence of innocence to be weighed against the links present."

*Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Each case must be examined according to its own facts on a case-by-case basis. *Burrell v. State*, 445 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

## B.    *Sufficiency of Evidence Linking Appellant to Methamphetamine*

It is undisputed that, in this case, appellant was not in exclusive possession of the apartment where officers discovered the methamphetamine; thus, the State had to present evidence linking appellant to the methamphetamine and prove beyond a reasonable doubt that appellant's connection to the narcotics "was more than just fortuitous." *See Blackman*, 350 S.W.3d at 594. We therefore examine the evidence to determine whether the State presented sufficient evidence such that a rational jury could have found beyond a reasonable doubt that appellant possessed—that is, exercised actual care, custody, control, or management over—the methamphetamine. *See Tate*, 500 S.W.3d at 414 (noting that, in "affirmative links" case, court's ultimate inquiry remains whether evidence was sufficient under *Jackson v. Virginia* standard).

The State presented evidence that, after conducting an investigation, Fort Worth Police Department officers obtained a search warrant to search a particular apartment for the presence of methamphetamine. Upon conducting the search, officers discovered appellant, along with two other individuals, present at the

apartment. At the time of the search, appellant was sitting on a couch in the living room of the apartment. Right next to the end of the couch where appellant was sitting was an end table. Around this end table, officers discovered several digital scales, at least one of which had crystal residue on it and another of which had a false cover to make it look like a CD case instead of a scale, a pipe for smoking methamphetamine, numerous small baggies commonly used to package narcotics for sale, a baggie containing twenty-five Xanax pills, and multiple baggies containing methamphetamine. Officers also discovered two handguns on the kitchen counter on the other end of the couch and several pipes used for smoking methamphetamine and marijuana in the kitchen. Officers also found male and female clothing in the apartment, as well as an envelope that was addressed to appellant and that stated the address of the apartment.

One officer discovered a baggie of methamphetamine on the floor directly in front of where appellant had been sitting on the couch. Officers also discovered three other baggies of methamphetamine, two of which were found in between the end table and the wall, along with another digital scale. One of the large baggies had broken open, and shards of methamphetamine were located on the floor all over the area, including behind the end table and on the floor in front of the couch. Officer McMeans testified that, in situations in which a SWAT team enters an apartment to execute a search warrant, it is not uncommon for suspects, upon hearing the team

14

trying to enter the apartment, to try to separate themselves from the narcotics, and he hypothesized that when the SWAT team started to break down the door, appellant tossed the baggies of methamphetamine behind the end table, which would account for its unusual location, as well as the pieces of methamphetamine all over the floor. Ultimately, officers recovered more than 57 grams of methamphetamine from the apartment, an amount that Officer McMeans characterized as a "dealer" amount, instead of an amount that a mere user of methamphetamine would typically possess. Officer McMeans testified that he believed that, despite the presence of two other people in the apartment at the time of the search, due to the positioning of appellant relative to the methamphetamine and the substantial amount of other drug paraphernalia, the drugs belonged to appellant.

The State thus presented evidence that appellant was present when the search was conducted, the methamphetamine was in plain view, there was a large quantity of methamphetamine in the location, other contraband—including another controlled substance, Xanax—and numerous items drug paraphernalia were present, and the narcotics and the paraphernalia were located in close proximity to appellant all around the end of the couch that he was sitting on at the time of the search. *See Evans*, 202 S.W.3d at 162 n.12 (listing, as some non-exclusive examples of "affirmative links," defendant's presence when search was conducted, whether contraband was in plain view, defendant's proximity to and accessibility of

15

narcotics, and whether other contraband or drug paraphernalia was present). Although several of the links identified in *Evans* are not present in this case, it is not the number of links but the logical force of all of the evidence that is dispositive. *See id.* at 162; *see also Satchell*, 321 S.W.3d at 134 (noting that absence of various links does not constitute evidence of innocence that is to be weighed against the links present in particular case).

Appellant argues that the evidence demonstrates that he was merely present in a location where narcotics were found and that his mere presence at the apartment is insufficient to establish that he possessed the methamphetamine. We disagree with appellant's contention that the evidence shows only that he was present at a location where methamphetamine happened to be found. Based on the location of appellant relative to the large quantity of methamphetamine, Xanax, and other drug paraphernalia in the apartment, all of which was in plain view and within easy reach of appellant from his position on the couch, a rational jury could have concluded, beyond a reasonable doubt, that appellant's connection to the methamphetamine was "more than just fortuitous" and that he, in fact, possessed the methamphetamine with the intent to deliver it. *See Blackman*, 350 S.W.3d at 594. Furthermore, although appellant argues that the envelope addressed to him at the address of the apartment searched does not establish that he owned or had the right to possess the apartment— pointing out that the envelope was not postmarked, had no postage, and was the only

16

envelope recovered from the apartment—it is at least some evidence connecting appellant to the particular apartment, evidence that the jury could have credited in determining that appellant was not an "innocent bystander" at the apartment, but instead used the apartment as a place to prepare methamphetamine for distribution. *See Evans*, 202 S.W.3d at 161–62 (noting that affirmative links rule "protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs").

When considering all of the evidence presented in the light most favorable to the verdict, as we must when conducting a review of the sufficiency of the evidence, we conclude that a rational jury could have found beyond a reasonable doubt that appellant exercised "actual care, custody, control, or management" over, and thus possessed, the methamphetamine recovered from the apartment. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(38), 481.112(a), (d); *Tate*, 500 S.W.3d at 414. We therefore hold that the trial court did not err when it refused to grant appellant's motion for a directed verdict.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).