

# NUMBER 13-23-00018-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROBERTO DOMINGUEZ,                                                Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

On appeal from the 24th District Court
of Jackson County, Texas.

# MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña**
**Memorandum Opinion by Justice Peña**

Appellant Roberto Dominguez appeals his conviction for possession of marijuana in an amount of more than fifty pounds but not exceeding 2,000 pounds, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(5). The trial court sentenced Dominguez to twenty years' imprisonment. In one issue, Dominguez argues that there is

legally insufficient evidence affirmatively linking him to the marijuana found inside of a vehicle in which he was a passenger. We affirm.

## I. BACKGROUND

A grand jury indicted Dominguez for possession of marijuana "in an amount of more that 50 pounds but less than 2,000 pounds." *See id.* Dominguez pleaded not guilty. He waived his right to a trial by jury, and the case proceeded to a bench trial, during which Jackson County Sheriff's Officer Stephn James Lang and Dominguez testified.

Officer Lang was traveling on highway U.S. 59 in Jackson County, Texas, when he observed a white truck slowing down in the passing lane, which he believed was nervous driving behavior. He followed the truck for over a minute and observed that it was impeding the flow of traffic. Officer Lang then passed the truck using the right lane and noticed that the front window was cracked. He initiated a traffic stop based on the driver having an obstructed view and improper use of a passing lane. As he approached the vehicle, Officer Lang smelled the faint odor of marijuana. He noted that there were two occupants in the vehicle. He identified Fidel Garza as the driver and Dominguez as the front passenger. Officer Lang then went to his patrol unit and learned that Garza had a suspended license. Officer Lang reapproached the truck and proceeded to speak with Garza at the rear of the vehicle. Officer Lang learned that neither occupant owned the truck. Next, Officer Lang visited with Dominguez, who remained seated in the truck's passenger seat. Officer Lang observed Dominguez on his cellphone, appearing to be texting in a "frantic" or hurried manner. When asked where they were going, Dominguez

2

stated they were traveling from Roma to Rosenburg[1] to meet his grandmother and then to a nearby hospital because Dominguez was feeling sick. According to Officer Lang, Dominguez's story contradicted Garza's story.[2]

Officer Lang instructed Dominguez to exit the truck, and he commenced a search based on his suspicion that the truck contained marijuana. He first searched the front passenger side, but he did not find anything. He then began searching behind the passenger seat, where he observed "[a] big silver suitcase kind of sandwiched" between the front passenger seat and the back seat. Inside the suitcase, Officer Lang discovered four large bundles wrapped in tape. He discovered three additional bundles under the back seat. Next, Officer Lang lifted the hood of the truck and discovered an additional bundle in the engine compartment. Officer Lang suspected that the bundles contained marijuana. He described the amount discovered as "[a] large contraband load." Officer Lang placed Garza and Dominguez under arrest and transported them to the Jackson County jail.

Officer Lang delivered the recovered bundles to the Department of Public Safety crime laboratory in Corpus Christi. Laboratory tests confirmed that six of the eight bundles were marijuana with an aggregate weight of 53.88 pounds. Officer Lang testified that the

---

[1] We take judicial notice of the fact that Roma is located in Starr County, Texas, near the Mexican border. Rosenberg is located in Fort Bend County, Texas just outside of Houston. The distance by road between the cities is at least 339 miles. *See* TEX. R. EVID. 201; *Office of Pub. Util. Couns. v. Pub. Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994) ("A court of appeals has the power to take judicial notice for the first time on appeal."); *In re J.M.H.*, 414 S.W.3d 860, 863 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (recognizing courts may properly take judicial notice of "geographical facts, such as the location of cities, counties, boundaries, dimensions, and distances").

[2] The State did not ask Officer Lang what Garza had told him, only whether the two passengers' stories were inconsistent. Garza's statements can be heard in the vehicle's dash cam recording, which the trial court admitted without objection. However, the State did not publish that portion of the video to the trial court.

laboratory did not test the remaining two bundles because the threshold weight for a second-degree felony offense had been met.

Dominguez testified on his own behalf. He maintained that Garza was taking him to Rosenburg to visit his grandmother "because she was sick, and I was sick at that moment, also, so I was going to go check myself out." Dominguez stated that he had flu-like symptoms and that there are not many doctors in Roma. Dominguez said his girlfriend, who lives in Houston, was going to pick him up in Rosenburg. Dominguez explained that his friend Juan DeLeon initially drove him from Roma, but he dropped him off in Falfurrias because he was notified of a family emergency. DeLeon then arranged for his cousin Garza to drive Dominguez the rest of the way. Garza picked up Dominguez at a rest stop in Falfurrias. Dominguez claimed he had no knowledge that there was marijuana in the truck, except for a marijuana joint that he and Garza smoked. He believed the suitcase behind his seat contained clothing.

On cross-examination, Dominguez stated that it is an almost six-and-a-half hour drive from Roma to Rosenberg. Dominguez did not make an appointment or select a doctor before leaving Roma. He admitted he sees a family doctor in Roma, but he was attempting to see a doctor in Rosenberg on the suggestion of his girlfriend. Months later, Dominguez was treated by his family doctor for COVID, which necessitated a trial continuance. Dominguez stated that his girlfriend resided in the Houston area, and that he met her at a bar on a prior visit to the area. He explained that he would travel to the area on occasion to see her. Dominguez said DeLeon initially agreed to drive him to Rosenberg and immediately return to Roma after dropping him off. The trial court found

4

Dominguez guilty and sentenced him to twenty years' imprisonment. This appeal followed.

## II.    DISCUSSION

### A.    Standard of Review & Applicable Law

"Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence." *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). Evidence is legally sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Joe v. State*, 663 S.W.3d 728, 732 (Tex. Crim. App. 2022) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under a legal sufficiency review, we view the evidence in the light most favorable to the verdict, while recognizing that "[t]he trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts." *Id.* at 731–32.

We measure the evidence produced at trial against the essential elements of the offense as defined by a hypothetically correct jury charge. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). Under a hypothetically correct jury charge in this case, the State was required to

prove beyond a reasonable doubt that (1) Dominguez (2) knowingly or intentionally (3) possessed (4) marijuana (5) in the amount of "2,000 pounds or less but more than 50 pounds[.]" TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(5).

Dominguez challenges only the possession element of the offense. Possession "means actual care, custody, control, or management." *Id.* § 481.002(38); TEX. PENAL CODE ANN. § 1.07(a)(39). To establish possession of a controlled substance, "the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the [substance] possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). When a defendant is not in exclusive possession of the place where a controlled substance is found his "mere presence is insufficient to establish possession." *Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016) (citing *Oaks v. State*, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982)). In that instance, "it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)). The affirmative links rule is designed "to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Id.* The Texas Court of Criminal Appeals has summarized a non-exhaustive list of factors that may affirmatively link a defendant to contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed

6

other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate*, 500 S.W.3d at 414 (quoting *Evans*, 202 S.W.3d at 162 n.12).

An implausible story can also be considered circumstantial evidence indicating knowledge of the controlled substance. *Dominguez v. State*, 474 S.W.3d 688, 697 (Tex. App.—Eastland 2013, no pet.); *Santiesteban-Pileta v. State*, 421 S.W.3d 9, 14 (Tex. App.—Waco 2013, pet. ref'd); *Bethancourt-Rosales v. State*, 50 S.W.3d 650, 655 (Tex. App.—Waco 2001, pet. ref'd). In the case of multiple vehicle occupants, inconsistent stories may also be a factor affirmatively linking a defendant to the contraband. *Allen v. State*, 249 S.W.3d 680, 694 (Tex. App.—Austin 2008, no pet.); *Roberson v. State*, 80 S.W.3d 730, 737 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Further, the presence of a large quantity of contraband may be considered as circumstantial evidence that the defendant is not simply an innocent bystander. *See Blackman v. State*, 350 S.W.3d 588, 595–96 (Tex. Crim. App. 2011); *Espino-Cruz v. State*, 586 S.W.3d 538, 544 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd); *Robinson v. State*, 174 S.W.3d 320, 329 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162. The ultimate inquiry remains whether, "[b]ased on the combined and cumulative force of the evidence and any reasonable inferences therefrom,

was a [factfinder] rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414.

**B.     Analysis**

Dominguez concedes that multiple affirmative links are present in this case, yet he maintains that the evidence does not establish that his connection to the recovered contraband was more than just fortuitous. We disagree.

Here, not only did Officer Lang detect the odor of marijuana, Dominguez admitted that he smoked a marijuana joint in the vehicle. This evidence establishes Dominguez knew that some quantity of marijuana was in the vehicle. *See id.*; *see also Deyon v. State*, No. 01-03-00775-CR, 2005 WL 3005493, at *3 (Tex. App.—Houston [1st Dist.] Nov. 10, 2005, no pet.) (mem. op., not designated for publication) (concluding that there was legally sufficient evidence linking the passenger of a vehicle to recovered narcotics where, among other factors, officers smelled marijuana, and the passenger showed signs of intoxication). Further, most of the bundles of marijuana were in the enclosed cab of the truck and within reach of Dominguez—behind his seat and underneath the rear seat. *See Evans*, 202 S.W.3d at 163 (listing the facts that appellant was sitting directly in front and within arm's reach of fourteen grams of cocaine as "two extremely strong 'presence' and 'proximity' links"); *see also Gomez v. State*, No. 04-21-00296-CR, 2022 WL 17970585, at *3 (Tex. App.—San Antonio Dec. 28, 2022, no pet.) (mem. op., not designated for publication) (affirming appellant's conviction because, among other things, "the evidence establishe[d that he] was not only in the presence of contraband, but he was also within reach of the backpack containing the contraband").

8

Dominguez also provided an implausible explanation for why he was a passenger in the truck. *Dominguez*, 474 S.W.3d at 697. While Dominguez had a treating physician available to him in his hometown, he maintained he was travelling hundreds of miles and for several hours with flu-like symptoms to seek treatment from a yet-to-be discovered physician for which he had no appointment. The unnecessary details added by Dominguez further highlight his story's implausibility—that his initial transportation failed because his friend had a family emergency, leaving him in Falfurrias; that his grandma was also sick and lived in Rosenberg; that his girlfriend, who he met at a bar in Houston, recommended he seek treatment in Rosenberg. Moreover, Officer Lang's testimony that Dominguez and Garza had conflicting stories further calls into doubt the veracity of Dominguez's story. *See Allen*, 249 S.W.3d at 694.

We must also consider Dominguez's story in conjunction with the quantity of marijuana discovered in the vehicle, which Officer Lang described as a "large contraband load." The trial court could have reasonably rejected Dominguez's story and found, based on the quantity of marijuana discovered, that Dominguez was not simply an innocent bystander. *See Blackman*, 350 S.W.3d at 595–96 (explaining that "[a] jury could reasonably find that [the driver of the vehicle] would not bring two innocent-bystander witnesses hundreds of miles to a large-scale narcotics transaction" where the defendant was a passenger in a vehicle containing three kilograms of cocaine); *Santiesteban-Pileta*, 421 S.W.3d at 15 (concluding there was legally sufficient evidence of possession based on the value of the contraband and defendant's implausible story); *Robinson*, 174 S.W.3d at 329 (explaining that the amount of contraband is a factor to be considered in

9

determining if an affirmative link exists; the persuasive weight of this factor increases as the amount of drugs increases).

Viewing the evidence in the light most favorable to the trial court's finding of guilt, and based on the combined and cumulative force of the evidence, we conclude that any rational trier of fact could have found that Dominguez intentionally and knowingly possessed the marijuana recovered from the truck. *See Joe*, 663 S.W.3d at 732; *Tate*, 500 S.W.3d at 414. Accordingly, we hold that Dominguez's conviction is supported by legally sufficient evidence. *See Harrell*, 620 S.W.3d at 913. We overrule his sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
3rd day of August, 2023.

10