**Opinion filed March 19, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00252-CR

_____

## RAVEN ROBERT RODRIGUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR58822**

### M E M O R A N D U M   O P I N I O N

Appellant, Raven Robert Rodriguez, was indicted for the offenses of murder and capital murder. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(2); 19.03(a)(2) (West Supp. 2025). The jury convicted Appellant of capital murder, found that he used a knife to murder the victim during the commission of burglary, and, because the State waived the death penalty, the trial court assessed his punishment at life

imprisonment in the Institutional Division of the Texas Department of Criminal Justice without the possibility of parole. *See* PENAL § 12.31(a)(2) (West 2019), § 19.03(a)(2).

Appellant challenges his conviction in two issues. In his first issue, he argues that the trial court erred when it included an incorrect definition of the culpable mental states in its charge. In his second issue, he asserts that the trial court improperly admitted evidence of extraneous offenses. We affirm.

## I. *Factual and Procedural Background*

Appellant had been in a relationship with the victim, Mariela Lozano, since high school. They had five children together over the course of twelve years but were never formally married.

Lozano was provided with a hotel room at the HomeTowne Studios in Midland as a benefit of her job as the night manager. She and Appellant lived there together with their children for a short time. Approximately one week before her murder, Lozano "cut all ties with him . . . [and] left him" after he had assaulted her. Following this assault, and in the five days prior to Lozano's death, Appellant did not live at the hotel.

On December 8, 2022, at approximately 5:30 a.m., officers and detectives with the Midland Police Department responded to a call reporting that a stabbing had occurred at the HomeTowne Studios. The responding officers found Lozano laying in the breezeway in a pool of blood, with her brother attempting to render her aid and claiming that the perpetrator was her "ex-husband." Lozano had been stabbed approximately twenty-two times on her head, neck, chest, and back, with lethal wounds that severed her carotid artery and punctured her trachea. There were also defensive wounds found on her hands and forearms. In Lozano's hotel room, officers observed that the door had been forced open, and that there was evidence

2

that a physical altercation had occurred in the room because it was in a state of disarray. The couple's four youngest children were found in the room, and they were quickly removed and taken to a safe location. Photographs of the scene showed a shoe impression on the door, a splintered door frame, and pieces of wood on the ground near the doorway.

Appellant fled the scene and was later apprehended by police at the location where he was hiding. During his custodial interview, Appellant admitted to stabbing Lozano and identified where police could locate the murder weapon, which was later found by the police department's K-9 unit at the location he had described.

Before trial, the State filed its notice of intent to offer evidence of extraneous crimes, wrongs, and other bad acts pursuant to "[Article] 38.37" of the Texas Code of Criminal Procedure and Rule 404(b) of the Texas Rules of Evidence, which included prior instances of violence that Appellant had allegedly committed against Lozano. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2025); TEX. R. EVID. 404(b). Appellant's trial counsel filed a motion in limine requesting that the trial court rule on the admissibility of this extraneous evidence, alleging that it was highly prejudicial because it would influence the jury to convict Appellant "for being a criminal generally." Prior to voir dire, the trial court held a hearing to determine the admissibility of this evidence. The State argued that Article 38.37 provided an exception to the general bar of extraneous-offense evidence to prove character-conformity; Appellant's trial counsel objected to the admission of this evidence based on the same grounds raised in his motion in limine. The trial court ruled that the evidence was admissible, and the case proceeded to trial.

The State offered evidence of the two prior incidents of violence committed against Lozano by Appellant through testimony from Lozano's aunt. The aunt testified that the first incident occurred several months before Lozano's death. When

3

Lozano was seven months pregnant, Lozano and Appellant had an altercation that resulted in Lozano being hospitalized for treatment of severe "scratches and scrapes" on her leg and several broken fingers. The aunt also testified about a second incident that occurred in Lozano's hotel room just five days before her death, after which she observed Lozano with scratches to her face and neck. Photographs of Lozano showed bruising, a swollen lip, and scratches on her face and neck. Video surveillance footage from the hotel of the second incident showed Appellant dragging Lozano into the room, and over the course of the next minute, someone was seen attempting to open the door from the inside; each time, the door was slammed shut until Appellant was shown walking out of the room leaving Lozano lying on the ground inside the doorway.

Surveillance video footage from the day of Lozano's murder showed Appellant unsuccessfully attempting to open both doors that led into Lozano's hotel room. He eventually kicked in the door that led to her bedroom and entered the room; Lozano then ran out through the other door. Appellant grabbed Lozano and attempted to pull her back inside, but she pulled away and proceeded down the landing away from the room. The surveillance video footage cuts to another location further down the landing where Lozano is seen backing away from Appellant, appearing to plead with him, and Appellant removing a knife from inside his jacket. Appellant rushed forward and began stabbing Lozano repeatedly until a group of people came up the stairs toward them. Appellant then ran down the landing and fled, and the group of people attempted to render aid to Lozano.

Appellant did not testify at trial, and his trial counsel argued that, although the evidence would lead to a finding that Appellant had committed some form of homicide, he could not be found to have burglarized the room because he also had a right to be there because he was Lozano's husband. The State argued that the hotel

room had not been provided to Appellant, he had no working key to the room, and he needed to kick in the door and forcibly enter the hotel room to get inside. The State also highlighted that Appellant and Lozano were never formally married, and that a common-law marriage did not exist because "a judge has to render it."

## II. *Culpable Mental State Definitions*

In his first issue, Appellant contends that the trial court erred when it "failed to provide the correct definitions of intentionally and knowingly" in its charge, by "fail[ing] to limit the culpable mental state to the 'result of conduct' required" for the indicted offenses. The focus of Appellant's argument is whether the complained-of error affected the jury's ability to find him guilty of capital murder, because the trial court failed to properly limit the culpable mental state that is applicable to the charged offense. He further contends that "the trial court completely left out the [mens] rea required for either a Capital Murder charge or a standard Murder charge," thus causing him egregious harm.

The Penal Code prescribes four culpable mental states—intentionally, knowingly, recklessly, and criminally negligent—and three possible conduct elements—nature of the conduct, result of the conduct, and circumstances surrounding the conduct. PENAL § 6.03 (West 2021); *see Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). When unspecified conduct is criminalized because of its result, the culpable mental state must be applied to that result. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). An offense may contain any one or more of these conduct elements that alone or in combination form the overall behavior that the legislature intended to criminalize, and it is these essential conduct elements to which a culpable mental state must apply. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). A trial court errs if it fails to limit in its charge the language of the applicable culpable mental state to the appropriate

5

conduct element. *Price*, 457 S.W.3d at 441; *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

As relevant to this case, a person commits capital murder if the person commits the offense of murder as defined in Section 19.02(b)(1) and intentionally commits the murder while in the course of committing burglary. *See* PENAL §§ 19.02(b)(1), 19.03(a)(2). Capital murder and murder are result-of-conduct offenses, which means that the culpable mental state relates to the result of the defendant's conduct, i.e., causing one's death. *Roberts v. State*, 273 S.W.3d 322, 328–29 (Tex. Crim. App. 2008); *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003) (citing *Cook*, 884 S.W.2d at 491). However, "capital murder is a result of conduct offense which also includes nature of circumstances and/or nature of conduct elements depending upon the underlying conduct which elevates the intentional murder to capital murder." *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) (where defendant was charged with capital murder with an underlying offense of burglary of a habitation, "[the] offense can be viewed as including all three conduct elements"). In this regard, "'[e]nters the habitation' is a result of conduct element while 'without the effective consent' is a circumstance surrounding the conduct element. . . . 'The unlawful appropriation' in the definition of theft refers to the nature of the conduct (the nature being that of unlawful appropriation)." *Id.* at 492 (quoting *Cook*, 884 S.W.2d at 493 n.5 (Maloney, J., concurring)). As a result, with this offense, the trial court must "limit[] the additional language concerning the culpable mental state to proving the 'conduct element' of the underlying offense." *Id.*; *see Hughes v. State*, 897 S.W.2d 285, 296 n.16 (Tex. Crim. App. 1994) (providing an example of a charge that matched the conduct elements with the definitions of the applicable culpable mental states).

## III. *Charge Error*

### A. *Standard of Review*

Reviewing complaints of charge error is a two-step process. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). First, we must determine whether error exists. *Id.* Second, if there is error, we must decide whether the appellant was harmed and if the harm is sufficient to require reversal. *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd). The applicable standard of review to be utilized for charge error depends on whether the claimed error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020).

The purpose of the trial court's charge "is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting CRIM. PROC. art. 36.14 (West 2007)). Because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). Therefore, when the charge is inaccurate, the trial court errs, and the error is subject to the appropriate harm analysis. *See Bell*, 635 S.W.3d at 645.

Here, while the trial court's charge limited the conduct elements for (1) intentionally or knowingly causing the death of an individual, (2) intentionally

7

or knowingly causing bodily injury to another, and (3) effective consent, the trial court should have clearly and appropriately delineated which mental state attached to the "Theft" portion of its charge and in turn limited the definition of the applicable mental state to the appropriate conduct element.[1] *See Patrick*, 906 S.W.2d at 492.

B.  *Harm Analysis*

There is no dispute that Appellant's trial counsel did not object to the definitions of intentionally and knowingly as they were submitted in the trial court's charge.  Therefore, we review the complained-of charge error under the *Almanza* "egregious harm" standard.  *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  Under this standard, when, as in this case, the defendant or his trial counsel fail to assert proper objections to the trial court's charge or fail to request and present a proper jury instruction, we will reverse only if the error was so egregious and created such harm that the defendant was deprived of a fair and impartial trial.  *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza*, 686 S.W.2d at 171.

"Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Villarreal*, 453 S.W.3d at 433; *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).  "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'"  *Villarreal*, 453 S.W.3d at

---

[1]Although the parties appear to agree that the trial court's charge "fail[s] to limit the culpable mental state" or "include[s] the full statutory definitions" of "intentionally" and "knowingly," we note that the trial court's charge does limit the culpable mental states in most of the definitions.  However, as we have said, the trial court did not clearly describe the culpable mental state for theft as it related to the underlying burglary offense in the capital murder charge.  Therefore, the trial court erred, but the result in this case is the same because Appellant did not suffer egregious harm as a result of such error.

433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). Further, "[a]n egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

C. *The Almanza Factors*

In *Almanza*, the Court of Criminal Appeals identified the factors that a reviewing court should consider when determining whether the complained-of charge error resulted in egregious harm. 686 S.W.2d at 171. They are: (1) the charge itself; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171); *Cosio*, 353 S.W.3d at 777 (citing *Hutch*, 922 S.W.2d at 171). These factors guide our analysis.[2] *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022).

1. *The Charge as a Whole*

The Court of Criminal Appeals has held that, "[w]here the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see also Kuhn v. State*, 393 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. ref'd) ("Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious.").

---

[2]We note that, while Appellant concedes that applying the *Almanza* factors is the proper analysis to employ because of the lack of any charge objection made at trial, he does not separately address them or to what extent, if any, these factors would support a finding of egregious harm. Rather, Appellant only contends, globally, that because the trial court's charge error "completely [omitted] the [mens] rea required," such error amounted to "the 'egregious harm' alluded to in *Almanza*."

Here, the charge's application paragraph, reproduced below, properly tracked the language of the indictment, the necessary statutory language, and the elements of capital murder:

**LAW SPECIFIC TO COUNT I CAPITAL MURDER**

The state accuses the defendant of having committed the offense of capital murder.

**Relevant Statutes**

A person commits the offense of capital murder if the person intentionally causes the death of an individual in the course of committing or attempting to commit burglary.

A person causes the death of another if, but for the person's conduct, the death of the other would not have occurred.

**Application of Law to Facts**

You must determine whether the state has proved, beyond a reasonable doubt, two elements. The elements are that—

1. the defendant, in Midland County, Texas, on or about December 8, 2022, intentionally caused the death of Mariela Lozano by stabbing Mariela Lozano with a knife; and

2. this was done in the course of committing or attempting to commit burglary of habitation.

**You must all agree on elements 1 and 2 listed above.**

No harm results from the trial court's failure to limit the definitions of the culpable mental states in the abstract portion of its charge if the application paragraph correctly states, as it did here, the elements of the charged offense and directs the jury to the appropriate definitions. *See Patrick*, 906 S.W.2d at 493; *Hughes*, 897 S.W.2d at 296–97 ("[W]hen [the terms 'intentionally' and 'knowingly'] are viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense."); *see also Elliston v. State*, No. 11-23-00270-CR, 2025

10

WL 477656, at *8 (Tex. App.—Eastland Feb. 13, 2025, no pet.) (mem. op., not designated for publication).

As we have said, the application portion of the charge sufficiently tracked the language of the indictment and the statutory elements of the charged offense—capital murder. We conclude that the charge when read in its entirety and in proper context does not weigh in favor of finding that Appellant suffered egregious harm, as he suggests. *See Medina*, 7 S.W.3d at 640; *Elliston*, 2025 WL 477656, at *8.

### 2. *The Evidence Presented at Trial*

In defense to the capital murder charge, Appellant did not assert that he did not cause Lozano's death. Instead, he contended that he could not have burglarized a habitation to which he had a right of possession; therefore, he could not have committed the underlying felony—burglary of a habitation—which is necessary to support the jury's finding of capital murder. *See* PENAL § 19.03(a)(2). The evidence presented to the jury included hotel surveillance footage that showed Appellant kicking in the door to Lozano's hotel room, following her down the landing as she retreated, and stabbing her multiple times outside another hotel room. Appellant also admitted to committing the murder during his interrogation.

At trial, Appellant argued that the offense did not constitute capital murder because he was the "co-owner" of the "residence" and therefore did not commit burglary. Therefore, his mental state was not an issue. As such, the state of the evidence does not weigh in favor of finding that Appellant suffered egregious harm with respect to how the terms "intentionally" and "knowingly" were defined in the trial court's charge.

### 3. *The Arguments of Counsel*

The closing argument of Appellant's trial counsel focused primarily on Appellant's right to the property, and that he could not have burglarized a property

to which he had a possessory interest. In fact, Appellant's trial counsel conceded that, "Yes, it was a murder," but argued it could not rise to the level of capital murder without proof that it was committed during the commission of a burglary. There was no reference by Appellant's trial counsel as to whether Appellant possessed the requisite mental state to commit either alleged offense. The State's argument referenced the culpable mental states only when discussing the elements of the offense and focused on Lozano's superior right of possession to the property and that Appellant's entry into Lozano's hotel room constituted a burglary.

Because Appellant's intent or knowledge was not a focus of counsels' arguments, and because no statements made by counsel exacerbated or ameliorated the charge error, *see Arrington*, 451 S.W.3d at 844, this factor does not weigh in favor of finding egregious harm.

#### 4. *Other Relevant Information*

The fourth *Almanza* "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant suffered egregious harm because of the charge error. *See Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013); *see also Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171.

We have outlined the evidence above that is pertinent to our harm analysis. Further, nothing in the record indicates that the jury was unable to render a correct verdict, consistent with the evidence presented, based on the trial court's error. We note that, during its deliberations, the jury never inquired, submitted any note, or communicated to the trial court any confusion or concerns by them regarding the deficiencies in the charge to which Appellant now complains. *See Lopez v. State*, 314 S.W.3d 70, 73 (Tex. App.—Waco 2010, no pet.); *Shavers v. State*, 985 S.W.2d

12

284, 292 (Tex. App.—Beaumont 1999, pet. ref'd). Therefore, it is unlikely that the jury was influenced, confused, or misled by the trial court's instructions.

Because the record does not demonstrate that the trial court's error affected or influenced the jury's ability to determine whether Appellant had the requisite intent or knowledge to commit the offense of capital murder, this factor does not weigh in favor of finding egregious harm.

### 5. *The Almanza Factors Considered Together*

As we have said, the trial court erred. However, consistent with our prior holdings, we conclude that this error did not result in a level of egregious harm such that Appellant was deprived of a fair and impartial trial. *See, e.g.*, *Arevalo v. State*, 675 S.W.3d 833, 853–56 (Tex. App.—Eastland 2023, no pet.); *Elliston*, 2025 WL 477656, at *9–10; *Gonzalez v. State*, No. 11-22-00117-CR, 2024 WL 2965154, at *4–6 (Tex. App.—Eastland June 13, 2024, no pet.) (mem. op., not designated for publication); *Espinosa v. State*, No. 11-22-00100-CR, 2024 WL 1862786, at *8–11 (Tex. App.—Eastland Apr. 30, 2024, no pet.) (mem. op., not designated for publication); *Rice v. State*, No. 11-22-00032-CR, 2023 WL 5109158, at *4–6 (Tex. App.—Eastland Aug. 10, 2023, no pet.) (mem. op., not designated for publication); *Elizondo v. State*, No. 11-21-00173-CR, 2023 WL 2169968, at *2–4 (Tex. App.—Eastland Feb. 23, 2023, no pet.) (mem. op., not designated for publication); *Green v. State*, No. 11-21-00097-CR, 2023 WL 1825168, at *6–8 (Tex. App.—Eastland Feb. 9, 2023, no pet.) (mem. op., not designated for publication).

Accordingly, we overrule Appellant's first issue.

## IV. *Extraneous-Offense Evidence*

In his second issue, Appellant contends that the trial court erred when it admitted evidence of extraneous offenses pursuant to Article 38.37 rather than Article 38.371. However, at trial, Appellant only objected to the admission of this

evidence pursuant to Rules 403 and 404(b) and did not assert the basis for the error that he now complains of on appeal.

A. *Preservation and Waiver*

To preserve a complaint for appellate review, the complaining party must present a specific, timely objection or motion to the trial court which states the specific grounds for the desired ruling. TEX. R. APP. P. 33.1(a)(1)(A); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021); *Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020); *see* TEX. R. EVID. 103(a). Further, the complaint and arguments raised on appeal must comport with and correspond to the objections made, if any, at trial or they are waived. TEX. R. APP. P. 33.1(a)(1)(A); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *Dominguez v. State*, 474 S.W.3d 688, 699 (Tex. App.—Eastland 2013, no pet.). As such, an objection asserted at trial on one ground cannot support a different contention on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *Edwards v. State*, 97 S.W.3d 279, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

Appellant first raised the issue of the complained-of extraneous-offense evidence when he filed his motion in limine. Prior to voir dire, the trial court held a hearing on this motion, determined that the evidence was admissible pursuant to Article "38.37," and denied Appellant's motion. However, the objection raised by Appellant in this motion was specific—the probative value of the evidence was substantially outweighed by the danger of unfair prejudice and "evidence of an extraneous offense is inadmissible unless an exceptional justification is shown." *See* TEX. R. EVID. 403, 404(b); *see also Arevalo*, 675 S.W.3d at 845.

Here, neither Appellant nor his trial counsel presented any objection to the trial court that admitting this evidence pursuant to Article 38.37 was improper

14

because Article 38.371 instead provided the applicable exception. Therefore, Appellant's complaint that he now asserts on appeal does not comport with the argument or objection that he made before the trial court on the same issue. *See* TEX. R. APP. P. 33.1(a)(1)(A); *see also Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Arevalo*, 675 S.W.3d at 845. As such, we conclude that Appellant failed to preserve and waived this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a).

B. *Admissibility*

Nevertheless, assuming that Appellant had properly raised and preserved the above issue for our review, this evidence would nonetheless have been admissible on other bases to demonstrate the nature of the relationship between Appellant and Lozano. *See Garcia v. State*, 201 S.W.3d 695, 702–04 (Tex. Crim. App. 2006). Thus, we conclude that the trial court did not abuse its discretion when it found that this evidence was relevant and admissible.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). This standard also applies to a trial court's decision to admit or exclude extraneous-offense evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Barron v. State*, 630 S.W.3d 392, 410 (Tex. App.—Eastland 2021, pet. ref'd). We will not reverse a trial court's decision to admit or exclude evidence, and there is no abuse of discretion, unless that decision lies outside the zone of reasonable disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *De La Paz*, 279 S.W.3d at 343–44; *Barron*, 630 S.W.3d at 410. Furthermore, we will uphold a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any theory of law that finds support in the record and is applicable to the case.

*Henley*, 493 S.W.3d at 93; *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

"Evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence." *Bluntson v. State*, No. AP-77,067, 2025 WL 1322702, at *7 (Tex. Crim. App. May 7, 2025) (citing TEX. R. EVID. 401), *pet. for cert. filed*, (U.S. Dec. 29, 2025) (No. 25-6476). "Evidence need not prove or disprove a particular fact by itself to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving a fact of consequence." *Id.* (citing *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); then citing *Henley*, 493 S.W.3d at 84 ("Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained would logically influence the issue.")). Pursuant to Rule 402, irrelevant evidence is inadmissible. TEX. R. EVID. 402.

### 1. *Articles 38.36(a), 38.37, and 38.371*

Appellant contends that the trial court erroneously admitted this extraneous-offense evidence pursuant to Article 38.37, rather than pursuant to Article 38.371. The evidence at issue included testimony, photographs, and video footage that pertain to the two incidents where Appellant committed acts of violence against Lozano prior to the night of her murder. Although evidence of extraneous offenses or bad acts is generally inadmissible to show character conformity, such evidence is admissible for other reasons, such as to show a defendant's culpable mental state, the absence of mistake or accident, or to illustrate the nature of the relationship between a defendant and the victim. *See* TEX. R. EVID. 404(b); CRIM. PROC. art. 38.371(b), (c); *Gutierrez v. State*, 630 S.W.3d 270, 283 (Tex. App.—Eastland 2020, pet. ref'd) (Rule 404(b) exceptions are "neither mutually exclusive nor collectively

exhaustive ... [and] 'Rule 404(b) is a rule of inclusion rather than exclusion.'" (quoting *De La Paz*, 279 S.W.3d at 343)).

Article 38.371 permits either party to offer "evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the [defendant] committed the offense" for which he is on trial, including evidence regarding the nature of the relationship between the defendant and the victim, if the alleged victim is a current or former member of the defendant's family or household, or a person with whom the defendant had a dating relationship. CRIM. PROC. art. 38.371; *see* TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, 71.005 (West 2019). The nature of the relationship—such as whether the victim and the defendant were married, estranged, separated, or divorced—is "clearly admissible under this Article." *Garcia*, 201 S.W.3d at 702. Further, prior acts of violence between the victim and the defendant may be offered to illustrate the nature of their relationship. *Id.*

Moreover, Article 38.36(a) of the Code of Criminal Procedure allows either party, in a murder prosecution, to admit evidence of the relationship between the victim and the defendant. It states:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding . . . the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

CRIM. PROC. art. 38.36(a) (West 2018). Thus, prior acts of violence between the deceased victim and the accused may also be offered to illustrate the nature of their relationship under Article 38.36(a). *See Garcia*, 201 S.W.3d at 702.

17

Although the trial court's reliance on Article "38.37" for the admission of this evidence was arguably improper, pursuant to Articles 38.36(a) and 38.371, the same evidence of Appellant's interactions with and prior acts of violence against Lozano prior to her death were admissible to demonstrate the nature of their relationship. *See* CRIM. PROC. arts. 38.36(a), 38.371; *see also Garcia*, 201 S.W.3d at 702; *Hernandez v. State*, No. 11-24-00017-CR, 2025 WL 1829560, at *3 (Tex. App.—Eastland July 3, 2025, no pet.) (mem. op., not designated for publication). Still, Articles 38.36 and 38.371 do not "trump" the Texas Rules of Evidence; they must be read in conjunction with them, particularly (as relevant here) Rules 403 and 404. *See Smith v. State*, 5 S.W.3d 673, 677–78 (Tex. Crim. App. 1999); *Keller v. State*, 604 S.W.3d 214, 228 (Tex. App.—Dallas 2020, pet. ref'd); *see also Rodriguez v. State*, 689 S.W.3d 386, 395–96 (Tex. App.—Corpus Christi–Edinburg 2024, pet. ref'd). Nevertheless, we conclude that the admission of this evidence was proper even upon a balancing of the required factors. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

2. *Rules 403 and 404(b)*

Rule 404(b)(2) allows for the admission of extraneous-offense evidence "for another purpose, such as proving motive, opportunity, [or] intent." TEX. R. EVID. 404(b)(2). Here, there were at least two such other purposes. The first was to show the nature of the relationship between Appellant and Lozano. *See* CRIM. PROC. arts. 38.36(a), 38.371(b). The other was to show that Appellant had both the intent and motive to enter Lozano's hotel room without her consent and to kill her. Therefore, the trial court did not abuse its discretion when it determined that the extraneous evidence of Appellant's prior acts of violence against Lozano was not impermissible character-conformity evidence under Rule 404(b).

18

However, even if extraneous-offense evidence is admissible under Rule 404, it still may be excluded under Rule 403 if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347 S.W.3d at 921.

In reviewing a trial court's determination under Rule 403, a reviewing court will reverse the trial court's judgment "rarely and only after a clear abuse of discretion [is shown]." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990)). When conducting a Rule 403 analysis, the trial court must balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco*, 210 S.W.3d at 641–42. These factors may blend together in practice. *Id.* Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet.

ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing analysis and determined that the evidence is admissible. *Id.*

The first *Gigliobianco* factor focuses on the inherent probative force of the proffered evidence. *Gigliobianco*, 210 S.W.3d at 641. As the Court of Criminal Appeals explained in *Gigliobianco*, "probative value" is more than just relevance. *Id.* It refers to how strongly an item of evidence "serves to make more or less probable the existence of a fact of consequence to the litigation[,] coupled with the proponent's need for that item of evidence." *Id.* We have addressed the relevance of the challenged evidence to show the nature of the relationship between Appellant and Lozano. With respect to the State's need for this evidence, the probative force of the evidence was significant given its nature and proximity to Lozano's murder. Thus, the first two *Gigliobianco* factors weigh in favor of admission.

The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. *Garcia v. State*, 630 S.W.3d 264, 269 (Tex. App.—Eastland 2020, no pet.). The third factor focuses on the tendency of the evidence to suggest a decision on an improper basis. *Id.* at 268. Evidence is not subject to exclusion under Rule 403 if it is merely prejudicial because "all evidence against a defendant is . . . designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Rather, to be excluded under Rule 403, the evidence must be *unfairly* prejudicial. *Gigliobianco*, 210 S.W.3d at 641; *see Pawlak*, 420 S.W.3d at 811. The fourth factor focuses on the potential of the proffered evidence to confuse or distract the jury from the main issues in the case, and the fifth factor focuses on the potential of the proffered evidence to mislead the jury. *Roe v. State*, 660 S.W.3d 775, 785 (Tex. App.—Eastland 2023, pet. ref'd).

Nothing in the record indicates that the evidence of the two extraneous incidents between Appellant and Lozano confused the jury, was given undue weight

by the jury, or caused the jury to reach a decision on an improper basis. Lozano's demise originated from her volatile relationship with Appellant. Evidence of the nature of their relationship was admissible for the reasons we have expressed. Additionally, the trial court instructed the jury that they could only consider this evidence if they found beyond a reasonable doubt that Appellant committed these wrongful acts. The trial court further instructed the jury that they could not consider this evidence to prove that Appellant is a "bad person." We presume that the jury followed the trial court's instructions. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Therefore, the third, fourth, and fifth factors do not weigh in favor of exclusion.

The sixth factor also weighs in favor of admission because the evidence did not consume an inordinate amount of time to present. The testimony regarding the extraneous incidents was brief, and only six photographs of the injuries that Lozano sustained because of these incidents were admitted, none of which were duplicative. Finally, the surveillance video footage of the extraneous incidents that occurred five days before Lozano's death was only one minute and twenty-six seconds in length.

Rule 403 contemplates excluding evidence only when there is a "clear disparity" between the offered evidence's prejudice and its probative value. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). Considering the standard of review, the presumption favoring the admissibility of relevant evidence, and the *Gigliobianco* factors, we cannot conclude that the trial court abused its discretion when it admitted this evidence. *See id.* ("Because Rule 403 permits the exclusion of admittedly probative evidence, it is a remedy that should be used sparingly." (footnote omitted)).

Accordingly, we overrule Appellant's second issue.

21

## V. *This Court's Ruling*

We affirm the judgment of the trial court.



W. STACY TROTTER

JUSTICE


March 19, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.